Healey v. Dudley.

---

BYRON HEALEY *v.* HARWOOD A. DUDLEY, Treasurer of Wyoming County.

5L    115
e 73 AD² 85

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1871.)

Section 15 of the new judiciary article (article 6) of the Constitution, in providing that the salaries of county judges "shall be established by law," confines the power of fixing such salaries to the legislature.

And *held*, that the statute conferring power on boards of supervisors to establish such salaries is unconstitutional and void.

Power to legislate as to the salary of county judges is not, within the meaning of section 17, article 3, of the Constitution, a power of local legislation.

The meaning of the terms "local legislation" considered. *The People* v. *O'Brien* (38 N. Y., 193), and other cases upon this head considered. (Per MULLIN, P. J.)

The true criterion by which to determine whether an act is local or general, is to inquire whether under it the people of the State may be affected; if not, it is local; if they can be, it is general. (Per MULLIN, P. J.)

If an agent of a town has on hand money which has been appropriated by proper authority to pay a sum not legally chargeable on the town, an action will lie or a *mandamus* will issue against such agent. (Per MULLIN, P. J.)

Otherwise where the agent has not received the money, and it is sought to compel him to apply to some other officer to pay it over to him, or where the act of appropriation has been annulled or rescinded.

THIS was a submission to the court upon a case made under section 372 of the Code without action. The facts appear in the opinion of the court.

*Byron Healey* (in person), for the plaintiff.

*E. E. Farman*, for the defendant.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. The plaintiff was elected county judge of Wyoming county at the general election in the fall of 1867, for the term of four years from the 1st January, 1868. He qualified and entered on the duties of his office. In November, 1867, the board of supervisors of Wyoming county fixed the salary of the county judge at $1,200 per annum, commencing on the 1st January, 1868. On the 17th November, 1870, the board of supervisors passed an act or resolution fixing the salary of the county judge at $1,700 per annum from the 1st of January of that year, payable quarterly by the treasurer of said county. On the 18th November, 1870, the same board passed a resolution that $1,700 be levied and assessed on the property of said county to pay salary of the county judge, and $500 for arrears of said judge's salary. These sums were raised accordingly and paid into the treasury. The $500 above mentioned was to make the salary of the judge $1,700 for the year 1870. On the 19th November, 1870, the board adjourned until the 13th December, 1870. On the 14th of that month it passed a resolution, the preamble to which recited that doubts have arisen as to the legality of fixing the salary of the county judge from January 1st, 1870, and it was therefore resolved that the act or resolution of the 17th November, 1870, be amended so as to establish the salary of the county judge at $1,700 from the 1st January, 1871. The plaintiff demanded of the treasurer in the spring of 1871, after the $500 above mentioned had been collected and paid into the treasury, the said $500, and for the balance of his salary for the year 1870, which the defendant, as such treasurer, refused to pay. The plaintiff then demanded that the defendant pay to him his salary from the 14th November, 1870, at the rate of $1,700 per annum, which the defendant refused, insisting that the act of the legislature authorizing the board of supervisors to fix the salaries of county judges is unconstitutional, the Constitution vesting that power in the legislature, and that it cannot delegate it to any other tribunal or body. The parties having agreed upon a case

Healey *v.* Dudley.

containing the foregoing facts, they submit it to this court to determine,

1st. Whether the act of the legislature authorizing boards of supervisors to fix the salaries of county judges is constitutional; and,

2d. If it is not, then whether the plaintiff is not entitled to the $500 which has been raised and paid in to the county treasurer for his use and benefit.

1st. Is the act in question constitutional? Constitutions, like other written instruments that prescribe the duties and regulate the rights of the citizens, are subject to construction and interpretation.

One of the. most important rules of construction is that effect be given to the intention of the body or of the parties who framed the instrument which is the subject of construction. This rule is called the polar star, which is to guide the legislature, as well as the courts, in their search after the meaning to be given to any particular clause of the Constitution.

I will now proceed to ascertain the object the convention that framed the Constitution had in view in the adoption of the clause of section 15 of the sixth article of the Constitution, which declares that "his (the county judge's) salary and the salary of the surrogate when elected as a separate officer, shall be established by law, payable out of the county treasury, and shall not be diminished during his term of office."

By section 14 of the sixth article of the Constitution of 1846 it was provided that " the county judge shall receive a salary, to be fixed by the board of supervisors, which shall neither be increased nor diminished during his continuance in office."

The committee of the convention of 1867 for revising the Constitution, to which it was referred to report a plan for organizing the judiciary of the State, provided, in the article proposed by them, that the salaries of the county judges be fixed by the boards of supervisors, thus continuing the provisions of section 14 of article 6 of the Constitution of 1846.

The report of the committee was under consideration in the

Healey *v.* Dudley.

convention on the 17th of December, 1867. Mr. Ketchum then moved to substitute the word " law " for the words " board of supervisors " ; and the reason why he desired the amendment made was to remedy the abuse which he had understood had been practiced by a board of supervisors fixing the salary at a small sum, because the judge elected was not of the same political party. Judge Comstock then moved to amend Mr. K.'s amendment as follows : " The salaries of county judges shall be established by the legislature, to be paid by the several counties." He declared his object to be to take away from the board of supervisors altogether the power to fix the salaries. This amendment of Mr. K., as amended by Judge Comstock, was voted down.

On the 19th December the section relating to the county judges was again before the convention, and Judge Comstock moved to strike out the words "*fixed by the board of supervisors*," and insert the words " established by law." He urged upon the convention that the dignity of the court would depend in a considerable degree on the salary of the judge, and the legislature was eminently the proper authority to establish a rate of compensation. Mr. Magee concurred with Judge C. in the necessity of the amendment, and it was adopted by the convention.

On the same day Mr. Graves moved to reconsider the vote adopted, the amendment of Judge C. taking away the powers, as he (Mr. G.) expressed it, from the supervisors, and giving it to the legislature to fix the salary of the county judge.

On the 19th of February, 1868, Mr. Graves offered a resolution that article 6 of the Constitution be recommitted to the committee on revision, with instructions to strike out and insert so that it should read, " the salary shall be established by the board of supervisors."

The question on the adoption of the resolution was put, and not receiving the votes of a majority of the members present, it was declared lost. The section, as amended on motion of Judge Comstock, is now a part of the judiciary article of the Constitution.

Healey v. Dudley.

It is thus demonstrated that it was the intention of the convention not to permit the board of supervisors to establish the salaries of the county judges, but, on the contrary, to impose that duty on the legislature.

Mere intention, however, clearly established, is not enough to justify us in declaring unconstitutional the law which gives the power to the board of supervisors to fix the salaries of the county judges, if the language of the instrument be not such as to give effect to such intention.

When an act is to be done according to law, or a thing is to be established by law, we all understand that the law intended is a law passed by the legislature, and not by some inferior body acting under powers conferred by the legislature, unless, from the nature of the case, the act of the inferior body is obviously intended.

The language of the section then plainly gives effect to the intent that the legislature, and not the board of supervisors, shall establish the salaries of the county judges.

These considerations would be conclusive against the constitutionality of the law in question. were it not for section 17 of article 3 of the Constitution. That section provides that the legislature may confer upon the boards of supervisors of the several counties of the State such further powers of local legislation and administration as they shall from time to time prescribe.

It is insisted that under this section the power to establish salaries was constitutionally conferred on the boards of supervisors.

Although section 17 of the third article of the Constitution was neither adopted nor amended by the convention of 1867, but was and is a part of the Constitution of 1846, yet it must be interpreted in view of and in connection with the judiciary article adopted by the convention of 1867. Section 17 does not in terms give the power to the board of supervisors. * * If the power is given to them by it, it is by construction, and in construing it now we must have regard to section 15 of the new judiciary article, which does assume to

Healey *v.* Dudley.

declare what body shall establish the salary of county judges. If the language of that section, reasonably and fairly construed, confers the power on the legislature, we are not permitted to go to another section and spell out a power to another and different body, when it would manifestly defeat the intention of the convention who framed the section which was intended to and does confer the power upon the legislature.

It seems to me we might close the argument here, and hold that by the Constitution the legislature, and not the board of supervisors, must establish the salaries of the county judges.

But I think a careful examination of the terms of section 17, in view of the adjudications of the courts, will show that legislation in regard to the salaries of the county judges is not local within the true intent and meaning of that section.

Legislation to be local, within the meaning of the Constitution, must apply to and operate exclusively upon a portion of the territory of the State, and upon the people living therein. If it applies to or operates upon persons or property beyond such locality, it is not local. I do not mean to say that a law to be local must be restricted in its operation to the person, property or rights which belong, if I may use the expression, within the locality within which the law is intended to operate. Such a construction would make all laws relating to municipal corporations general, as they affect all persons being within its limits, without regard to their place of permanent residence.

But a law is not local that operates upon a subject in which the people at large are interested.

The distinction which I desire to draw is very well expressed by Denio, J., in his opinion in the case of *Williams* v. *The People* (24 N. Y., 405).

The act which was before the court in that case was chapter 508 of the Laws of 1860, entitled " An act in relation to police courts in the city of New York." Section 33 of that act provided that whenever any larceny shall be committed in said city and county, by stealing, taking and carrying

Healey *v.* Dudley.

away from the person of another, the offender may be punished as for grand larceny, although the value of the property taken shall be less than twenty-five dollars. It was insisted by the prisoner's counsel, who was indicted for larceny from the person, that the act was unconstitutional, because it was a local bill, and embraced more than one subject.

Denio, J., in answer to the suggestion that it was a local bill, says: "It has no doubt features which savor of locality, for it punishes a well known common-law offence more severely, if committed within the limits of that city, than if committed elsewhere. But it prescribes the rule of conduct for all persons, whether residents of the city or of any other part of the State, and its increased penalties are intended to protect residents of other localities equally with inhabitants of the city. * * * Offenders, when convicted, are to be imprisoned in one of the prisons of the State out of the city, and to be provided for at the expense of the State at large; and the disqualification which attaches to a convict under the act affects him wherever he may be in this State. I cannot think that a statute having such consequences is to be classed with special provisions, making appropriations for particular roads, public buildings, or the like, situated in particular local divisions."

The county court, of which the county judge is the sole judge, has jurisdiction over all forms of civil actions for the recovery of money or of personal property, in which the amount sought to be recovered does not exceed $1,000, and the defendants reside in the county in which the action is brought. Any person in any part of the State may be plaintiff, and defendants must be residents.

As presiding judge in the Court of Sessions, he has power to try all criminal offences, not punishable with death, cr in States prison for life, committed within his county.

He has the powers of a justice of the Supreme Court at Chambers, and as such may make orders under certain limitations in actions, the venue of which may be in other counties of the State.

And he may hold a county court in any county of the State, except the counties of New York and Kings.

An officer whose powers are so extensive, and may affect the persons and property of citizens in any of the counties of the State, is not a local officer.

As by far the largest share of his duties are performed in and for the county of which he is the judge, it is doubtless just that it should pay his salary. But that is by no means a controlling consideration in determining whether a law is local which establishes his salary.

Every citizen in the State has interest in the manner in which a county judge discharges his duty; and in so far as compensation influences that subject, every citizen is interested in seeing that it is just and adequate, and hence, from the very nature of the subject, it ought not to be left to be regulated by men who are interested in withholding adequate compensation, or with whom personal or partisan considerations have greater weight than the interest of the public.

The precise question now under consideration does not seem to have been before the Court of Appeals.

In the Common Pleas of New York, it was decided, as long ago as 1857, that an act of the legislature, which provided that no member of the common council of New York city should receive compensation for his service, was not a local act; and it was said that a statute cannot be termed local or private which provides for the government of a considerable portion of the territory and property of the State, delegating powers of legislation, and authorizing the passage of laws which, in their operation, affect all the citizens of the State, who either in their persons come within the range, or whose property is within the limits of that jurisdiction.

MONELL, J., of the Superior Court of New York, arrived at the same conclusion in the case of *Burnham* v. *Acton* (35 How., 48).

These cases have never been overruled by the Court of Appeals, notwithstanding the principle they decide, if adopted

by that court, should have led it to a different conclusion in several recent cases in that court.

In the case of *The People* v. *O'Brien* (38 N. Y., 193), GROVER, J., says: "That inasmuch as the framers of the Constitution did not make population the test by which to determine whether a law was local or general within the meaning of that term as used in section 16 of the third article, they must be presumed to have used the term local in the sense in which it is generally understood. In this sense any law limited to any particular locality is local, irrespective of the population of such locality, whether great or small." The act, in reference to which the learned judge was speaking, was an act entitled ' An act to enable the board of supervisors of the county of New York to raise money by tax for the use of the corporation of the city of New York, and in relation to the expenditure thereof, and to provide for the auditing and payment of unsettled claims against said city, and in relation to actions at law against said corporation.' There was a clause in this act relating to the term of office of the council- men of the city, and the question was whether the act containing that and upon which the question before the court arose was constitutional, or whether it was a local bill, and embracing more than one subject which was not disclosed in the title. It was held to be local and unconstitutional. GROVER, J., says: "It is clear that it relates only to the officers of the municipal corporation of New York, and has no force outside of the territory embraced in the corporation, nor any possible effect upon property not within the corporate limits, or upon persons not for the time being within such limits. It would seem to follow, necessarily, that the act in question is local, as contradistinguished from general. The former is entirely confined in its operations to the property and persons of a specified locality, the latter embracing either persons or property of the people of the State generally, or of some class of persons or species of property not limiting the operation of the law to any particular locality less than the whole."

Healey *v.* Dudley.

This reasoning is, it seems to me, at war with the position put forward in the cases in 1st Hilton and 35 How., *supra*.

Those cases decide that an act is not local that provides for a considerable portion of the territory and population of the State, and authorizes the passage of laws that affect the persons and property outside of the territory of the municipality. GROVER, J., says that the case of O'Brien is distinguished from that of Williams, *supra*, because the latter provided for the confinement of convicts in the prisons of the State outside of said city. In the case of Williams, the act under which the questions considered arose did not provide for the imprisonment of a prisoner, convicted under section 33 of that act, in one of the prisons of the State; no allusion is made to the place of confinement. But, by the laws of the State, a prisoner, when convicted of grand larceny, must be confined in a State prison.

If the case of Williams is to be considered to be a correct exposition of the law, then every statute creating a corporation, or amending the charter of a corporation, which confers powers on such corporation or its officers, authority under which the rights of persons residing in places beyond the corporate limit may be affected, is a general and not a local law, and it is not necessary that the act itself should in terms provide that the statute should extend to and operate upon such persons.

The test which GROVER, J., lays down to determine whether an act of the legislature is local or general, is unobjectionable in the case in which he applied it, but it clearly could not have been applied in the case of Williams, nor can it be applied in the class of cases to which that case belongs.

Now, in a certain sense, an act creating a municipal corporation is local, and it may be so drawn as to be purely local.

But if it confers powers on the courts or officers of such corporations, by which the persons or property of those not not residing within it may be affected, it is not as to such persons a local act.

The true criterion by which to determine whether an act is local or general is to inquire whether under it the people of the State may be affected. If not, it is local; if they can be, it is general.

In the case of *The People* v. *Hills* (35 N. Y., 449), "An act amending the charter of Rochester so as to authorize the common council of that city to elect seven instead of four directors of the Rochester and Genesee Valley R. R. Co." was held to be local, and embracing more than one subject which was not disclosed in the title, and therefore unconstitutional.

In *Conner* v. *The Mayor* (1 Seld., 285), one of the judges declared it as opinion that an act regulating the amount of compensation, and the manner of making it to one or more of the public officers of a county for their official services, is neither private nor local within the meaning of the Constitution. The proposition can hardly be said to have been decided by the court in that case, but, taken in connection with the other cases referred to, it is entitled to considerable weight in the decision of the question.

In view of these cases I am of opinion that the statute conferring the power on boards of supervisors to establish the salaries of county judges is not one authorized by section 17 of article 3 of the Constitution, and is therefore void.

But whether I am right or wrong as to the construction of section 17, it seems to me impossible to sustain the act if effect is to be given to the manifest intention of the framers of the judiciary article and to the language of section 15 of that article.

The plaintiff insists that if it shall be held that the act is unconstitutional for any cause, yet he is entitled to a *mandamus* to compel the county treasurer to pay him the $500 directed by the supervisors to be raised to make up his salary to $1,700 for the year 1870.

In the case of *The People* v. *Lawrence* (6 Hill, 244), chamberlain of the city of New York, the application was for a *mandamus* to compel the chamberlain to pay to the relator a

sum of money which had been appropriated to him by the board of supervisors of the county of New York to reimburse him for costs and expenses incurred in defending himself in an impeachment against him as one of the special justices of New York. The bill was presented to the chamberlain, who refused to pay it.

The court denied the motion for a *mandamus*, on the ground that the supervisors had no power to appropriate the money to the relator, and it was the duty of the chamberlain to refuse to pay it. It was said by BRONSON, J., that if the board had jurisdiction to allow the relator anything by way of indemnity, the chamberlain could not refuse to pay; but as it had no power to make any allowance, the chamberlain was in duty bound to refuse to pay it.

This ruling was approved in *Morris* v. *The People* (3 Den., 381, 399).

It was held in the case of *Starin* v. *The Town of Genoa*, and of *Gould* v. *The Town of Sterling* (23 N. Y., 439), that action would not lie against a town to recover an installment of interest on bonds issued under one of the railroad bonding acts, when the steps prescribed by law to make the bonds valid had not been taken.

In *Ross* v. *Curtiss* (31 N. Y., 606), the action was brought to recover of the defendant, as supervisor of the town of Sterling, moneys received by him from the treasurer of Cayuga county to pay the interest on bonds issued by his town under the railroad bonding act.

The defendant resisted the payment because the proceedings required to be taken in order to make the bonds binding on the town had not been taken, and they were for that reason void, and he was not liable to pay the interest, although it had been paid over to him for that purpose. It was held that he held the money as agent, and as such could not question the acts of his principal, and judgment was ordered against him.

In the case of *The People* v. *Mead* (24 N. Y., 114), it was held that a *mandamus* should issue under circumstances almost identical with those in the case last cited

Healey *v.* Dudley.

In the case of *The People* v. *Mead* (36 N. Y., 224), a *mandamus*, to compel the commissioners appointed under one of the railroad bonding acts to obtain from the county treasurer moneys held by him, and which had been raised and appropriated to pay interest on bonds issued by the town, was refused, it appearing that the bonds had been illegally issued.

The distinction between the above cases, which at first glance would seem to be conflicting, is, as I understand the views of the judges, this: when an agent of the town has in his hands money which has been appropriated by the proper authority to pay a debt not legally chargeable on the town, an action may be maintained against such agent, or a *mandamus* will issue against him.

But when such officer has not received the money, but it is sought to compel him to apply to some other officer or person to pay it over to him, he may show that the town is not legally liable for the debt or demand sought to be enforced.

In view of these cases, the case of *The People* v. *Lawrence* must be deemed to be overruled. In that case the appropriation was palpably illegal. The chamberlain had the money in his possession, yet he was permitted to resist payment on the ground of the illegality.

If the right of the plaintiff to the $500, raised in the winter of 1870–'71 to make up the deficiency of his salary for 1870, was not taken away by the resolution of the 14th December, 1870, the defendant would be liable for that service.

If we are right in holding the act of the legislature authorizing boards of supervisors to establish the salaries of county judges unconstitutional, there was no power in the board of supervisors of Wyoming to fix the salary of the plaintiff for 1870, or for any other year.

The $500 levied upon the property of the county, and collected to pay to the plaintiff to make his salary for 1870 $1,700, was levied and collected without authority

of law; but if the resolution of November, 1870, had remained in force, the plaintiff would doubtless have been entitled to it as between himself and the defendant.

The resolution which provided for the raising of $500, to be paid to plaintiff toward his salary, was an appropriation of it, so that the defendant, as county treasurer, would have been justified in paying it without further action of the board.

But the resolution of the 14th December annulled that of the 14th November, so that there was no longer in force any law or resolution of the board fixing the salary of the plaintiff for the year 1870.

Although this did not in terms repeal or annul the resolution directing the raising of the $500, yet it was a virtual repeal of it, and, from the passage of the resolution of the 14th December, it was the duty of the defendant to refuse to pay to plaintiff that sum.

If the board could not establish plaintiff's salary, it was not a resolution of either the law or the Constitution to repeal a resolution raising or appropriating money for that purpose. The $500 were a mere bonus voted to the plaintiff, which the board could at any time recall before payment.

For the same reason the plaintiff is not entitled to the increase of salary from the 14th of November, 1870, until the end of that year.

There must be judgment in favor of the defendant, with costs.