### YOUNG v. CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. May 13, 1902.)

1. PUBLIC OFFICERS—ACT CONFERRING SALARY—ENACTMENT AFTER ACCEPTANCE OF OFFICE—VALIDITY.

   Plaintiff was elected alderman of a city of the second class for two years, commencing January, 1900. Thereafter Act April 25, 1901, was passed, attaching to the office of alderman in such cities a salary of $750. Plaintiff continued to perform his duties, and served out his term. Held, that the act was not void as a gratuity, in so far as giving to plaintiff a salary for the balance of his term; plaintiff having had a right at any moment to resign, and it being, therefore, assumed that he continued in office in reliance on the salary.

2. SAME—AMENDMENT TAKING AWAY SALARY—VALIDITY.

   Act Jan. 22, 1902, providing that Act April 25, 1901, attaching a salary to the office of alderman, should take effect January 1, 1902, and that nothing therein should be "taken or held as granting or conferring any salary * * * for services as such alderman for any part of the year 1901," having been passed after the expiration of plaintiff's term, and after his salary had accrued, was void, in so far as affecting him, as impairing a vested right.

Submission of controversy between Christopher W. Young and the city of Rochester. Judgment for plaintiff.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

John F. Kinney, for plaintiff.
William A. Sutherland, for defendant.

HISCOCK, J. Plaintiff seeks to recover the sum of $512.50, with interest, as salary which became due to him as an alderman of the city of Rochester during part of his term. We think he should be allowed to recover.

The facts involved in the controversy are few and very simple. Plaintiff was elected as an alderman of one of the wards in the defendant city in November, 1899, and qualified and entered upon the discharge of his duties as such in January, 1900. His term of office was for two years. At and for some time subsequent to the date of his election no salary was attached to the office. April 25, 1901, an act was passed by the legislature, which took effect immediately, so amending section 13 of chapter 182 of the Laws of 1898, entitled "An act for the government of cities of the second class," as to attach to said office of alderman, held by plaintiff, a salary at

the rate of $750 per year. No question is raised upon this argument as to the effect of this amendment in this respect, or that the legislature had the power to pass it. Plaintiff, after said amendment took effect, and under its provisions, continued to discharge the duties of his office until the expiration of his term, in December, 1901. January 22, 1902, the legislature passed an act, to take effect immediately, which provided that the amendment attaching a salary to the office of alderman, above referred to, should take effect January 1, 1902, and that nothing in said amendatory act should be "taken or held as granting or conferring any salary to any alderman of any of the cities of the second class, for services as such alderman, for any part of the year nineteen hundred and one," and that no action at law or other proceeding should "be had or maintained, or judgment recovered, in any of the courts of this state for or on account of salaries for or on behalf of any such alderman, for services as such, for any part of the year nineteen hundred and one." Plaintiff claims that under the provisions of the first act he became vested with the right to the salary therein provided for during so much of his term of office as followed its enactment, which could not be taken away by the retroactive legislation of the last act.

Defendant's counsel, in support of his contention that the act of 1902 was constitutional and valid, and deprived plaintiff of any claim to salary, has, with much industry, called to our attention a large number of cases adjudicating the right of the legislature to change the salary or term of an office such as plaintiff held, even after the incumbent has been elected thereto. The principles laid down in such cases are too well established to permit of dispute, or even doubt. They are conceded by the plaintiff in this case. There is no question but that the legislature, after plaintiff was elected to the office of alderman, would have had the right to reduce or abolish a salary, if attached thereto, or would have had the right to change and reduce the duration of the term for which it might be held. The legislative acts sustained by the cases which have been called to our attention, however, all differ vitally from the one involved here, in that they provide for some change of condition, to become effective in the present or the future, whereas the act here under discussion is retroactive, and relates to the past.

The act under which plaintiff seeks to recover did not give any salary for a period preceding its passage. If it had, clearly, it would have attempted to give a bonus or gratuity, and would have been void. Defendant's counsel argues that, even though relating to the future, it still gave such a gratuity, and that there is no consideration, as between plaintiff and defendant, by virtue of which he may enforce its provisions. In support of this contention, we find the learned counsel stating in his brief:

"The plaintiff was bound to accept the office to which he was elected, and became obligated to serve without compensation during the full two years for which he was elected."

And again:

"On the 13th day of November, 1899, he [plaintiff] signed, swore to, and filed with the clerk of the city of Rochester, his oath of office, wherein he sol-

emnly vowed, covenanted, and swore with the people that he would faithfully discharge the duties of the office of alderman for the term for which he had been elected."

In line with the idea thus set forth, it is argued that by accepting an election as alderman, and by taking the oath as such, plaintiff became absolutely bound to and with the city of Rochester to serve as one of its aldermen for the full term for which he was elected; that at the time when the act of April 25, 1901, was passed, he could not resign from or relinquish the office, and therefore under no possibility could be regarded as having continued in the office, and to discharge the duties thereof, in reliance upon the act which granted him salary. If this reasoning could be sustained, we think it would have much force in leading us to the conclusion that the salary granted to plaintiff was a gratuity, and the act void. We are, however, unable to adopt the reasoning. While public policy may require that a person elected to office should continue to discharge the duties thereof for a full term, and while laws have from time to time been enacted visiting a punishment or penalty upon one who refused to accept and discharge the duties of an office to which he was elected, there was, in our opinion, no law which compelled plaintiff, after election to the office of alderman, to stay in the office or discharge its duties any longer than he desired to. It was and is expressly provided by the public officers act that:

"Public officers may resign their offices as follows: Every officer of any municipal corporation to the clerk of the corporation." And that: "Every resignation shall be in writing addressed to the officer or body to whom it is made. If addressed to an officer, it shall take effect upon delivery to him at his place of business or when it shall be filed in his office."

We are not supplied with a copy of the oath which the plaintiff took, but we assume that it was the ordinary one provided by law and the constitution. If such, it plainly bound plaintiff to a faithful discharge of the duties of the office while he held the same, and could not by any possibility be construed into an oath, as claimed by the learned counsel for the defendant, that he would remain in office until the expiration of his term.

We therefore have it that, at the time when the act granting the salary was passed, plaintiff had the right at any moment to resign and retire from the office which he held. Under such conditions, the act was passed giving a compensation for the discharge of the duties of the office. Knowing of these provisions, as he must be presumed to have known, plaintiff continued in office, and to perform the duties thereof, until its term expired. We think it must be held that in so doing he relied upon, and took into consideration and account, the provisions of the act.

It is conceded in behalf of defendant that, if a salary had been attached to this office at the time plaintiff secured an election thereto, any part thereof which had accrued could not be taken away from him by a subsequent legislative act. Keeping in mind the right of plaintiff at any time in the midst of his term to retire from office, we do not see that the legislation in question stands upon a much different basis. In the case first assumed, it might be argued that

plaintiff would have sought the office as quickly and readily, though no salary was attached. Nevertheless, having been elected to the office while it carried with it a salary, he would have acquired a vested right thereto, which could not be destroyed by retroactive legislation. In the case at bar it is argued that plaintiff would have continued in office, though no salary had been attached thereto. Nevertheless, having the right to retire at any moment, he continued to serve under a law which said that he should have a salary for so doing. Under such circumstances, contractual relations arose and accrued between him and the defendant, which entitle him to demand the compensation promised, and which would be annulled or destroyed by an act such as is relied upon by defendant. Fisk v. Police Jury, 116 U. S. 131, 6 Sup. Ct. 329, 29 L. Ed. 587.

We think that the cases cited in behalf of the defendant may all be readily distinguished upon their facts from this one. It is impossible, within reasonable limits, to review them all. We shall simply refer to two which seem to be especially relied upon by counsel. In Healey v. Dudley, 5 Lans. 115, the court impliedly held that a board of supervisors had the right to pass a resolution rescinding a former resolution granting $500 back pay to a county judge. This case, however, fairly involved, and rested upon, the proposition that the original resolution rescinded was absolutely unconstitutional and void; and in this and other respects the case radically differs from the one presented to our consideration. In Nash v. Bank, 105 N. Y. 243, 11 N. E. 946, the legislature, by enactment and repeal of other acts, destroyed plaintiff's right to recover certain penalties imposed upon banks for taking unlawful interest. It is manifest, however, that the abatement of penalties inflicted by way of punishment for violations of law is very different, even though it destroys a cause of action vested in a private individual, from the impairment of vested rights resting upon contract, express or implied.

In accordance with these views, judgment is ordered for the plaintiff for the sum of $512.50, with interest thereon from January 1, 1902, together with costs. All concur.