F. P. STEPHENSEN ET AL. V. A. E. WOOD ET AL.

No. 5677.   Decided January 21, 1931.
(34 S. W., 2d Series, 246.)

*Levy & Levy,* for appellants.

In order to conserve the Court's time in reviewing the cases and authorities cited by appellants, we have extracted and here present a complete alphabetical table thereof.   Article 3, Section 56, Constitution of the State of Texas; Article 3, Section 57, Constitution of the State of Texas; Article 2, R. C. S., State of Texas, 1925; Anderson v. Houts, 240 S. W., 647, 649; Austin Bros. v. Patton, 288 S. W., 182; Bell County v. Hall, 105 Texas, 558, 153 S. W., 121; Clark v. Finley, 93 Texas, 171, 54 S. W., 343; Commissioners of Limestone Cty. v. Garrett, 236 S. W., 970; County of Milwaukee v. Isenring, 109 Wis., 9, 53 L. R. A., 641; Ellis v. Frazier, 38 Ore., 462, 63 Pac., 642, 644; Galloway v. Wolfe, 223 N. W., 1; Herbert v. Baltimore County Commissioners, 97 Md., 639, 55 Atl., 376, 379; Holt v. Birmingham, 111 Ala., 369, 372, 19 So., 735;

Huxtable v. State, 26 S. W., (2nd) 578; In re Opinion of Justices, 216 Ala., 469, 113 So., 584; Jefferson Cty. v. Cole, 204 Ky., 27, 263 S. W., 1114; Lastro v. State, 3 Texas App., 363, 365; People v. Wilcox, 237 Ill., 421, 86 N. E., 672; People v. O'Brien, 38 N. Y., 193; People v. Newburgh Ry. Co., 86 N. Y., 1; Pineland Club v. Berg, 110 S. C., 505, 96 S. E., 915; Sisk v. Cargile, 138 Ala., 164, 35 So., 114, 117; State v. Castleberry, 252 S. W., 221; State ex rel. Atty. General v. Sayre, 142 Ala., 641, 39 So., 240; State ex rel. Hammann v. Levitan, State Treasurer, 228 N. W., 140; State v. Stewart, 152 Md., 419, 137 Atl. 39; State v. Lawler, 53 N. D., 278, 205 N. W., 880, 883; State of South Carolina v. Higgins, 38 L. R. A., 561; Vincent v. State, 235 S. W., 1084, 1086; Webb v. Adams, 23 S. W., (2nd) 617; 25 R. C. L., 814; Bouvier's Law Dictionary; Burrill's Law Dictionary; Words & Phrases, First, Second and Third Editions.

*Robert Lee Bobbitt,* Attorney-General, and *Jack Blalock,* Special Assistant, for appellees.

Article 941 of the Penal Code as amended by Senate Bill 88 of the Regular Session of the 41st Legislature is not a local or special law, but is a general law applying with equal force to all the people. Geer v. Connecticut, 161 U. S., 519; Ex Parte Maier, 103 Cal., 476; State v. Rodman, 58 Minn., 393; Lubitich v. Pollock, 6 Fed. (2d) 237; Magner v. People, 97 Ill., 320; Logan v. State, 111 S. W., 1029; Smith v. State, 113 S. W., 289; State v. Corson, 50 Atl., 780; Reed v. Rogan, 59 S. W., 255; Clark v. Finley, 54 S. W., 343; State v. Tice, 41 L. R. A. (New Series) 469; Sterrett v. Gibson, 168 S. W., 16.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

F. P. Stephensen, on behalf of himself, and all other licensed fishermen in Galveston County, Texas, filed this suit in the District Court of such county against A. E. Wood, Chairman, and all other members of the Game, Fish & Oyster Commission of Texas, and against certain other officers of this State, to restrain the enforcement of Art. 941, Penal Code of Texas, 1925, as amended by S. B. 88, Chap. 119, Acts Regular Session of the 41st. Legislature, known as the "Holbrook Bill." The district court entered a temporary restraining order which was continued in force until January, 1930, when the case was submitted on the application for

temporary injunction. On such date the trial court entered an order dissolving the temporary restraining order, and refusing the temporary injunction. Stephensen appealed to the Court of Civil Appeals at Galveston, which court, in an opinion by Justice Lane, affirmed the judgment of the district court in so far as such judgment dissolves the temporary injunction restraining the enforcement of that part of the statute above named which prohibits the catching of fish in the waters described in the statute by the means therein prohibited; but reversed and rendered that part of the judgment of the trial court which dissolves the temporary injunction restraining the enforcement of the provisions of the statute, prohibiting the possession of seines, nets and trawls on the waters therein named.

On motion for rehearing by Stephensen, the Court of Civil Appeals has certified to the Supreme Court the following question:

"Is the act attacked by appellants, Art. 941, a local or special law as those terms are used in Sections 56 and 57 of Art. 3 of our State Constitution."

From the question certified it is seen that Stephensen contends that the act in question is unconstitutional and void, because it is a local or special law within the meaning of Sections 56 and 57 of Art. 3, supra, and was passed without the publication of the notice provided for in Section 57. It is admitted that notice was not published or otherwise given.

The statute in question, omitting formal and immaterial parts, reads as follows:

" 'Article 941. It shall be unlawful for any person to place, set, use or drag any seine, net or or other device for catching fish and shrimp other than the ordinary pole and line, casting rod and reel, artificial bait, trot line, set line, or cast net or minnow seine of not more than twenty feet in length for catching bait, or have in his possession any seine, net or trawl without a permit issued by the Game, Fish and Oyster Commissioners or by his authorized deputy in or on any of the waters of any of the bays, streams, bayous or canals of Orange, Jefferson, Chambers, Harris, Galveston and Brazoria Counties, or in or on any of the inland waters, streams, lakes, bayous or canals of Matagorda County, or within or on the waters of Agua Dulce Creek, Oso Creek, Shamrock Cove, Nueces Bay, Ingleside Cove, Red Fish Cove, Shoal Bay, Mud Flats, Shallow Bay, which are more clearly defined as beginning at the South West end of 'Red Fish Cove,' thence South on a line intersecting Corpus Christi Channel, and all the waters lying from this line, the

said Channel, and between Harbor Island and the Mainland to Aransas Bay; all of Aransas Bay between Port Aransas and Corpus Christi Bayou and lying between Harbor Island and Mud Island; Copano Bay, Mission Bay in Refugio County, Puerto Bay, St. Charles Bay, Hynes Bay, Contec Lake, Powderhorn Lake, Oyster Lake; Sabine Pass, leading from Sabine Lake to the Gulf of Mexico; San Luis Pass, leading from Galveston West Bay to the Gulf of Mexico; Turtle Bay; Brown's Cedar Pass; Mitchell's Cut, Pass Cavallo, leading from Matagorda Bay to the Gulf of Mexico; Cedar Bayou, leading from Mesquite Bay to the Gulf of Mexico; North Pass or St. Jo Pass; Aransas Pass, leading from Aransas Bay to the Gulf of Mexico; Corpus Christi Pass, leading from Corpus Christi Bay to the Gulf of Mexico; Brazos Santiago Pass, leading from the lower Laguna Madre to the Gulf of Mexico, or the pass on the north of Laguna Madre, leading into Corpus Christi Bay, which pass shall be defined as beginning one-fourth of a mile southwest of Peat Island and running from said point to Flour Bluff in Nueces County, or in or on the waters within one mile of the passes herein mentioned, connecting the bays and tidal waters of this State with the Gulf of Mexico or in or on or within a mile of any other such passes, or within the waters of any pass, stream or canal leading from one body of Texas bay or coastal waters into another body of such waters; providing that nothing in this article shall prevent the use of spear or gig and light for the purpose of taking flounders.

"'Sec. 1a.   Provided that it shall be unlawful for any person to drag any seine, or use any drag seine, or shrimp trawl for catching fish or shrimp, or to take or catch fish or shrimp with any device other than with the ordinary pole and line, casting rod, rod and reel, artificial bait, trot line, set line, or cast net, or minnow seine of not more than twenty feet in length for catching bait, or to use a set net, trammel net or strike net, the meshes of which shall not be less than one and one-half inches from knot to knot, in any of the tidal bays, streams, bayous, lakes, lagoons, or inlets, or parts of such tidal waters of this State not mentioned in Section 1 hereof.

"'Sec. 1b.   Provided that shrimp trawls may be used for taking shrimp in Matagorda Bay, San Antonio Bay or that part of Aransas Bay and all that part of Corpus Christi Bay not mentioned in Section 1.

"'Sec. 1c.   Provided that it shall be unlawful to attach to any set net, strike net or trammel net used in any of the waters of any of

the tidal bays, streams, bayous, lakes, lagoons, or inlets of this State, any cork line or lead line of a size greater than one-fourth inch in diameter.

" 'Sec. 1d. Provided that it shall be unlawful to take any shrimp from any of the waters of this State of less length than five and one-half inches; provided that fifteen per cent of any cargo of shrimp may be of less size.

" 'Sec. 1e. Provided that it shall be unlawful for any person to take, or have in his possession in this State, any speckled sea trout of less length than fourteen inches, any red fish of less length than fourteen inches, or of greater length than thirty-two inches, or any drum of less length than eight inches or of greater length than twenty inches, any flounder of less length than twelve inches, or any sheephead of less length than eight inches.

" 'Sec. 1f. Any person who shall violate any of the provisions of this Article shall be deemed guilty of a misdemeanor, and on first conviction shall be fined in a sum of not less than twenty-five ($25) Dollars nor more than one hundred ($100) dollars; and on second or more convictions shall be fined in a sum of not less than one hundred ($100) dollars nor more than two hundred ($200) dollars and his fisherman's license or dealer's license or both shall be automatically canceled and he shall not be entitled to receive another fisherman's license or dealer's license for one year from the date of his conviction; and provided that the Game, Fish and Oyster Commissioner of Texas or his deputy shall have the power and right to seize and hold nets, seines or other tackle in his possession as evidence until after the trial of defendant and no suit shall be maintained against him therefor."

The constitutional provisions which Stephenson contends were not complied with in the passage of the above statute read as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

(Here follows a number of subjects)

"And in all other cases where a general law can be made applicable, no local or special law shall be enacted; provided, that nothing herein contained shall be construed to prohibit the Legislature from passing special laws for the preservation of the game and fish of this State in certain localities."

"Sec. 57. No local or special law shall be passed, unless notice of the intention to apply therefor shall have been published in the

locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill and in the manner to be provided by law. The evidence of such notice having been published, shall be exhibited in the Legislature, before such act shall be passed."

The fish in the streams and coastal waters of Texas are the property of the State, and no person has any vested property right therein. Furthermore the preservation of the wild game life of the State, including the fish in its streams and coastal waters, is a matter in which the people generally over the State are interested. It follows that the legislation here under attack is of general public concern.

It seems to be contended by Stephensen that the instant law is local or special within the meaning of the above quoted provisions of our State Constitution because its enforcement is restricted to a particular locality, and does not include all coastal waters. This contention is utterly untenable. It is the settled law in this State that a statute is not local or special within the meaning of Sections 56 and 57 of Article 3 of our State Constitution even though its enforcement be restricted to a particular locality if persons or things throughout the State are affected thereby, or if it operates upon a subject in which the people at large are interested. Clark v. Finley, 93 Texas, 171, 54 S. W., 343 (Sup. Ct.); Reed v. Rogan, 94 Texas, 177, 59 S. W., 255, (Sup. Ct.); Logan v. State, 54 Texas Cr. 74, 111 S. W., 1028 (C. C. App.). The mere fact that the statute only operates in certain counties of the State does not make it a local or special law. Likewise the mere fact that this law only operates in the coastal waters of certain counties, and does not operate in the coastal waters of other counties does not make it a local or special law.

In Clark v. Finley, supra, our Supreme Court speaking through Judge Gaines, held:

" 'The act in question is general in its terms and in its operation, save in certain specified counties, and can with no propriety be termed a local or special law.' "

Further in the same opinion it is held:

"And again it is held that a statute, although its enforcement be restricted to a fixed locality, is not local in its character if persons or things throughout the State be affected by it. Williams v. People, 24 N. Y., 405; Healey v. Dudley, 5 Lans., 115."

■

In Reed v. Rogan, supra, our Supreme Court again speaking through Judge Gaines, expressly approved the holding in Clark v. Finley and further held:

"This brings us to the second question, is it a local law, within the meaning of section 56 of article 3 of the constitution? Local it is in the sense that it applies to the lands of the state situate in a particular locality. But, in our opinion, it is not local within the meaning of the term as used in our constitution. The question as to what constitutes a local law in the latter sense came before us at the last term of this court, and it was there held that the act of 1897, restricting the compensation of certain officers in a designated class of counties in the state, and commonly known as the 'Fee Bill,' was not a local law. Clark v. Finley, 93 Texas, 173, 54 S. W., 343. The effect of that decision was the holding that the mere fact that a law was made to operate upon certain counties of the state, and was not operative as to others, did not make it either a local or special law; and it seems to us that the point there decided is decisive of the question now under consideration. While the determination of the counties in which the law should have effect depended upon the population of the respective counties of the state, it was distinctly as local in its operation as the provision the validity of which is now involved in this suit. It has been well said that 'a law is not local that operates upon a subject in which the people at large are interested.' Healey v. Dudley, 5 Lans., 115. The sales of the school lands of the state may be a matter of especial importance to the people who reside in the localities where they are situate. They are none the less a matter of interest to the people in general and to the state itself. Not only is the school fund of which the lands are a part a matter of public interest, but also the provision in question confers upon every citizen of the state who is capable of contracting, and who may comply with its conditions, the right to lease or purchase the lands therein designated. The enactment is not arbitrary. The fact that it is made to operate in a certain locality only grows out of its subject-matter. The subject-matter being lands, the legislation, in order to be provident, must be made to apply in some localities, and not in others, unless perchance, there were school lands in every locality in the state, and all were of a uniform quality and character. But in fact our school lands differ greatly in quality, have been classified by law, and are marketable in varying degrees. To say that the legislature cannot provide different conditions for the sale of the lands in one locality

from those provided in another, except by a law passed under the constitutional restrictions as to local legislation, would be to say that it could not authorize a sale or make other disposition of the landed property owned by it in its capital city without giving notice of the intention to apply for the passage of the law, as is provided in section 57 of article 3 of the constitution. In such a case, who is to give the notice? The simple solution of the question is that the people of the state—its public—are interested in the property of the state, and that a law which provides for its sale is a general and public law. If the law is valid, then it is clear that under its provisions the relator has no right either to purchase or lease the lands which were already under lease to the respondent Slaughter. The writ of mandamus is therefore refused."

In Logan v. State, supra, our Court of Criminal Appeals announced the same rule as the Supreme Court and held:

"In the case of State v. Corson, 67 N. J. Law, 178, 50 Atl., 780, it was held that 'a statute is not special or local, within the meaning of the Constitution, merely because it prohibits the doing of a thing in a particular locality, but is general if it applies equally to all citizens and deals with a matter of general concern.' See, also, Doughty v. Conover, 42 N. J. Law, 193."

Under the above authorities we hold that the act in question is a general, and not a local or special law within the meaning of Sections 56 and 57 of Art. 3 of our State Constitution. The statute operates upon a subject matter in which the people at large are interested; it applies with equal force to all persons everywhere; and the fact that it only operates in certain localities grows out of the subject matter. To say that the Legislature cannot enact laws to protect the fish along a certain part of the coast line of the State because such a law would be local or special, would be to say that all such regulations must apply to every part of the State. A regulation protecting fish in the coastal waters which is made to apply to the entire State would be an idle and useless thing, as most of our counties have no coast line at all. Also the protection of fish and their spawning grounds along any part, or all of the coast line of the State is a matter of general public interest. For the reasons stated we hold this to be a general law.

We recommend that the question certified be answered "No."

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.