

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

May 2, 1951

Hon. Rogers Kelley, Chairman
Senate Water Rights, Irrigation
  and Drainage Committee
52nd Legislature
Austin, Texas                   Opinion No. V-1171

Re: Constitutionality of House Bill
    No. 25, as amended, relating to
    the construction of dams on the
    Nueces River.

Dear Sir:

Your request for the opinion of this office concerns House Bill No. 25 which is pending before the Senate Committee of which you are Chairman. You state:

"A hearing was held upon the Bill before the Committee . . . and the Committee instructed the writer . . . to request an opinion from you as to the validity and to the constitutionality of the Bill, before taking any action upon the Bill, as a serious question was raised before the Committee as to the Bill's validity and constitutionality."

House Bill No. 25 provides:

"Section 1. No application for a permit for the construction, enlargement or extension of any dam, lake, reservoir or other facility upon the Nueces River and/or any of its tributary streams for the diversion, impounding or storage of public water which would inundate or cause the inundation or forced relocation, partially or wholly, of any city or town incorporated for more than ten (10) years shall be granted or permit issued by the State Board of Water Engineers without the consent of the majority of the qualified property taxpaying electors of such city or town."

The other sections of the bill provide the method for determining the necessity for an election and the procedure for conducting that election should it be required to determine if a majority of the electors favor the project.

As originally introduced, House Bill No. 25 was not restricted in application to the Nueces River but was applicable to any river in the State. By amendment, however, it was provided that the terms of the bill would apply only to the Nueces River. It is in this latter form that the bill is before us.

The subject of the constitutionality or validity of the bill presents two questions. These are:

(1) Whether House Bill No. 25 is a local or special law prohibited by Section 56 of Article III of the Texas Constitution in that

(a) It regulates the affairs of counties, cities, towns, wards, or school districts; or

(b) It provides for the opening and conducting of elections or fixing or changing the places of voting; or

(c) Whether House Bill No. 25 is a local or special law which is prohibited in cases where a general law can be made applicable.

(2) Whether the necessity for an election and consent of the majority of property owners to be affected is an impairment of the right of eminent domain granted to the Lower Nueces River Water Supply District and the other authorities which might desire to construct dams on the Nueces River.

The first question arises by virtue of the provisions of Section 56 of Article III of the Texas Constitution which are, in part:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

"...

"Regulating the affairs of counties, cities, towns, wards or school districts;

"...

"For the opening and conducting of elections, or fixing or changing the places of voting;

Hon. Rogers Kelley, page 3    (V-1171)

"  . . .

"And in all other cases where a general law
can be made applicable, no local or special law
shall be enacted.  . . ."

The effect of this bill is to limit the power of the State
Board of Water Engineers to grant permits for the construction
of improvements upon the Nueces River for the diversion, im-
pounding or storage of public water when such construction
would inundate or force relocation of incorporated cities or
towns described in the bill.  Directly or indirectly it also lim-
its the power of an existing public agency, the Lower Nueces
River Water Supply District, created by House Bill No. 283,
Acts 51st Leg., R.S. 1949, ch. 159, p. 326 (Art. 8197f note, V.C.
S.) to construct dams, etc., on the Nueces River when they
would inundate or force relocation of such a city or town.  In
these respects the bill operates on and affects the power and
duties of the State Board of Water Engineers and the Lower
Nueces River Water Supply District rather than "regulating
the affairs of counties, cities, towns," etc.  In Harris County
Flood Control District v. Mann, 135 Tex. 239, 140 S.W.2d 1098
(1940), the Supreme Court held that the act creating the Harris
County Flood Control District with boundaries and area iden-
tical with the boundaries and area of Harris County, and mak-
ing the Commissioners' Court of Harris County the governing
body of such district, does not violate Article 3, Section 56,
prohibiting the Legislature from passing any "local law" or
"special law" regulating the affairs of counties or prescribing
the duties of officers in counties.  The Court said:

"Simply stated, the Act of 1937 is fully author-
ized by Section 59 of Article XVI of our State Con-
stitution, and the Act creating this district should
not be classed as a local or special law within the
meaning of the constitutional provision under discus-
sion."

Many conservation, navigation, and flood control districts
have been created in this State by statutes applying to part or all
of certain specific rivers or specific counties within particular
water-sheds.  These separate acts contain many special provi-
sions which apply only to the particular river or district involved.
Certain of these acts are set out in notes following Article 8197f,
V.A.C.S., under the title "Water Supply and Control," with the
description "The following laws, though passed as general laws,
are in fact special acts relating to particular conservation and
reclamation districts."

The act creating the Lower Nueces River Water Supply District itself has special provisions relating to the power to "acquire water rights theretofore granted by the State of Texas to cities or districts situated wholly or partly within the district or outside the district under terms to be negotiated between the district and any such city . . ." (Acts 51st Leg., R.S. 1949, ch. 159, p. 326, Sec. 12). It would hardly be contended that this act or this section of the act regulates the affairs of cities or is otherwise condemned by Article III, Section 56, as a "local" or "special law."

Although limited to certain rivers and certain areas these acts and their special provisions have been upheld by the Courts of our State as treating a subject matter of general public interest and therefore not "local or special" within the meaning of Article III, Section 56.

In Lower Colorado River Authority v. McCraw, 125 Tex. 268, 83 S.W.2d 629 (1935), a bill which established the Lower Colorado River Authority, was before the Court. It was there contended that Section 16 of that act, which exempts the bonds of the Authority from taxation by the State, any municipal corporation, county, or other political subdivision, "is unconstitutional and void because it violates section 56 of article III of our state Constitution." In overruling this contention the Court stated:

> "In our opinion, Section 16 of this Act is not violative of the provision of the Constitution just cited. In the first place, it is settled that a statute is not local or special, within the meaning of this constitutional provision, even though its enforcement is confined to a restricted area, if persons or things throughout the State are affected thereby, or if it operates upon a subject that the people at large are interested in. Stephensen v. Wood, 119 Tex. 564, 34 S.W.2d 246. An examination of this act convinces us that it operates upon a subject that the state at large is interested in.
> . . ."

This same holding is to be found in Lower Neches Valley Authority v. Mann, 140 Tex. 294, 167 S.W.2d 1011 (1943). There are other Texas cases in which the courts have held that when the subject of a bill is a matter of general public interest, the bill is not a special or local law within the meaning of Article

III, Section 56.[1]

Based upon the holdings in these cases, it would appear that even though House Bill No. 25 deals solely with the Nueces River and its tributaries and not with any other river in the State of Texas, it is not a local bill since the subject regulated is one in which the public at large is vitally interested. This, upon the basis that if the public, generally, is interested in the authority to construct dams and conserve, protect, and regulate waters, it is also interested in any limitation upon this authority.

If the provisions of House Bill No. 25 had been enacted as part of the original act creating the Lower Nueces District, it is doubtful if any question could be successfully raised as to its validity. In our opinion, such provisions are no less valid because of their separate and subsequent enactment.

We think the situation here presented is analogous to the proposition before the Supreme Court in Stephensen v. Wood, 119 Tex. 564, 34 S.W.2d 246 (1931), wherein the validity of a fishing law was challenged on the ground that it was a local or special law applying to a limited area of waters and was not advertised for 30 days as required by Article III, Section 57. The Court upheld the act as a general law, saying:

"The fish in the streams and coastal waters of Texas are the property of the state, and no person has any vested property right therein. Furthermore, the preservation of the wild game life of the state, including the fish in its streams and coastal waters, is a matter in which the people generally over the state are interested. It follows that the legislation here under attack is of general public concern.

"It seems to be contended by Stephensen that the instant law is local or special within the meaning of the above-quoted provisions of our state Constitution because its enforcement is restricted to a

---

1/ Reed v. Rogan, 94 Tex. 177, 59 S.W. 255 (1900); Stephensen v. Wood, 119 Tex. 564, 34 S.W.2d 246 (Com. App. 1931); McgGee Irrigating Ditch Co. v. Hutton, 85 Tex. 537, 22 S.W. 967 (1893); Handy v. Johnson, 51 F.2d 809 (E.D. Tex. 1931).

particular locality, and does not include all coast-
al waters. This contention is utterly untenable.
It is the settled law in this state that a statute is
not local or special within the meaning of sections
56 and 57 of article 3 of our state Constitution,
even though its enforcement be restricted to a
particular locality, if persons or things through-
out the state are affected thereby, or if it operates
upon a subject in which the people at large are in-
terested. Clark v. Finley, 93 Tex. 171, 54 S.W. 343,
345; Reed v. Rogan, 94 Tex. 177, 59 S.W. 255, 257;
Logan v. State, 54 Tex. Cr. R. 74, 111 S.W. 1028,
1029. The mere fact that the statute only oper-
ates in certain counties of the state does not make
it a local or special law. Likewise the mere fact
that this law only operates in the coastal waters of
certain counties, and does not operate in the coast-
al waters of other counties, does not make it a local
or special law." (emphasis ours)

In view of these authorities, it is our opinion that
House Bill No. 25, applying as it does to the Nueces River
and its tributaries, treats with a subject matter of general
public concern and is not a local or special act, within the
meaning of Article III, Section 56.

Concerning the second question, it will be seen that
House Bill No. 25 does not, on its face, in any way concern the
right of eminent domain. However, the indirect result of the
application of the bill might restrict the right of eminent do-
main which was granted by the Legislature to the Lower Nueces
District. This, although the primary application of the bill is
upon the State Board of Water Engineers. The question thus
presented is, conceding this to be some impairment or some
limitation upon the district's right of eminent domain, is it a
prohibited limitation?

It is well settled that the right of eminent domain is a
sovereign right which exists in the State. The right, being a
sovereign right of the State, may be exercised solely by the
Legislature in the first instance. 1 Nichols, Eminent Domain
18 (3rd Ed. 1950). The right of eminent domain, being a right
inherent in sovereignty, constitutional provisions concerning
eminent domain are said to recognize, limit, or regulate this
right rather than to confer it. 29 C.J.S. 781, Eminent Domain,
Section 3. This sovereign power to take private property for
public use cannot be surrendered, alienated, or contracted
away, nor can the Legislature bind itself or its successors not

to exercise it. Any attempt so to do would be invalid. Herman v. Board of Park Commissioners, 200 Iowa 116, 206 N.W. 35 (1925); 29 C.J.S. 782, Eminent Domain, Sec. 4. This rule against impairment of a sovereign right is likewise applicable to any attempt on the part of the Legislature to impair the right of eminent domain. As stated in Trustees of Phillips Exeter Academy v. Exeter, 90 N.H. 472, 11 A.2d 569 (1940):

> "As attributes of this sovereignty, it is recognized that among the powers essential to the maintenance of government which cannot be alienated or impaired, three important ones are the police power, taxation and eminent domain. That the Constitution recognizes them either expressly or by necessary implication does not signify their non-existence in the pre-constitutional life of the state. . . ."

These expressions and rules seem to form the basis for a contention that the right of eminent domain may not be impaired by the Legislature even to the extent of enacting a statute conditioning the right previously granted to a water supply district, upon an affirmative vote of a majority of the people to be subjected to a loss of property by the exercise of the power. The law, however, seems to be to the contrary. It is well stated in Randolph, The Law of Eminent Domain, p. 94 (1894):

> "There is no objection to condition the exercise of the eminent domain upon the action of private persons. Thus, the petition of persons within a defined class is often made the basis of proceedings to lay out a highway. The construction of a public undertaking may be conditioned on the assent of a certain proportion of property owners affected, or upon the assent of a majority of the electors within a county."

A similar statement is found in Detroit Int. Bridge Co. v. American Seed Company, 249 Mich. 289, 228 N.W. 79 (1930) where it is stated:

> "As eminent domain is an attribute of sovereignty the Legislature could have imposed any conditions it pleased upon its exercise. . . ."

There are cases from other jurisdictions in which the right of eminent domain is specifically conditioned upon a vote of the people to be affected thereby or by a vote of the people compos-

ing the entity to which the right was granted.[2]

It thus seems to be well settled that when the Legislature grants the right of eminent domain, that body may condition the right upon a vote of the people to be affected by the use of the granted right. In House Bill No. 283, Acts 51st Leg., R.S. 1949, ch. 159, p. 326, the Legislature created the Lower Nueces River Water Supply District and granted it the right of eminent domain, as follows:

"The District shall have the authority to acquire all property real or personal which within the discretion of the board of directors is needed in accomplishing the objectives of the District and to facilitate the requisition of property it shall have all the powers of eminent domain available to water control and improvement districts under the general law."

The Legislature, having been the source of the original grant of the power of eminent domain, that body may, under the law, condition the right upon an affirmative vote of the people to be affected.

This opinion is limited solely to the question of the constitutionality of House Bill No. 25. The question of whether public interest calls for the enactment or rejection of this bill is a matter wholly within the discretion of the Legislature, and no opinion thereon is intended or to be inferred from the discussion above.

## SUMMARY

House Bill No. No. 25 prohibiting the Board of Water Engineers from issuing a permit for the building of any dam on the Nueces River or its tributaries without the consent of a majority of the taxpaying voters in any city which may be inundated by the building of a dam, is constitutional and is not a local or special law within the prohibitions of Article III, Sec. 56, Constitution of Texas. The

---

2/ Hamilton G. & C. Traction Co. v. Parrish, 67 Ohio St. 181, 65 N.E. 1011 (1902); City of Albuquerque v. Huning, 29 N.M. 590, 225 P. 580 (1924); People v. Port Jervis, 100 N.Y. 283 (1885); Noonan v. County of Hudson, 52 N.J.L. 398 (1890); Mills, Eminent Domain, p. 179 (2nd Ed. 1888).

bill does not impair the sovereign right of eminent domain. This opinion relates solely to the question of the constitutionality of House Bill No. 25, and not to the question of whether the public interest calls for the adoption or rejection of the bill, this being a matter wholly within the discretion of the Legislature.

Yours very truly,

APPROVED:

Charles D. Mathews
First Assistant

Everett Hutchinson
Executive Assistant

Price Daniel
Attorney General

PRICE DANIEL
Attorney General

By E. Jacobson

E. Jacobson
Assistant

EJ:b