## W. H. BROWN V. M. K. SHINER.

### No. 7188.

1.　**School Lands—Grazing Lands—Constitution.**—Section 4 of article 7 of the State Constitution prescribes, that lands "set apart to the public free school fund shall be sold under such regulations and at such times and on such terms as may be prescribed by law." The Act of 1887 provided that *grazing lands* leased for five years should be withdrawn from sale until the expiration of such lease. *Held*, that the Legislature could lawfully withdraw from sale for a time such lands and allow them leased during the interval or permit them to be leased and protect them from sale during the lease, at least for the term of five years. Said act was constitutional.

2.　**Classification.**—Under the Act of 1887 it was not necessary to the validity of a lease of grazing lands that they should be classified, as was provided in case of sales. Act of 1887, secs. 4, 5.

3.   Lease of School Land—Demand for Actual Settlement.—The action of the Commissioner of the General Land Office in making a lease is conclusive of the question of non-demand for the land for actual settlement.

4.   Actual Settler. — See facts held sufficient to show that appellant was not an actual settler upon the land claimed, on July 5, 1887, when the act under which he claimed rights as such settler went into effect.

APPEAL from Frio.   Tried below before Hon. D. P. MARR.

No statement is necessary.

*R. W. Hudson* and *W. T. Merriweather*, for appellant.—1.  No valid lease could be made by the Commissioner of the General Land Office until the land was duly classified under the Act of 1887, prior to the execution of the lease and the taking effect of the same.   Acts 20th Leg., pp. 83, 84.

2.   An irrevocable lease of common school lands for five years is in contravention of the Constitution of Texas and contrary to public policy.   Smisson v. The State, 71 Texas, 222, and authorities cited; Const., art. 7, sec. 4.

3.   The Act of the Legislature, approved April 1, 1887, is unconstitutional in so far as it authorizes the Commissioner of the Land Office to lease common school land for a term of five years irrevocable, as this would prevent a subsequent Legislature from exercising their judgment as to the mode of disposing of said land.   Const., art. 7, sec. 4; Smisson v. The State, 71 Texas, 222, and authorities cited.

4.   There can be no valid lease of the common school lands when the same is in demand for actual settlement; the policy of the State being to award these lands to actual settlers.   Burleson v. Durham, 46 Texas, 157; Gen. Laws 1887, p. 88, sec. 15.

5.   An actual settler is protected from the date of his first entry, if his intent is in good faith and is honestly carried out by improvement and actual occupancy.   Burleson v. Durham, 46 Texas, 158.

*J. M. Eckford,* for appellee.— 1.  The Act of 1887 authorizing the leasing of grazing lands for short terms and protecting the lessees is constitutional.   Smisson v. The State, 71 Texas, 222; Arnold v. The State, 71 Texas, 239.

2.   The act of the Commissioner of the Land Office in determining whether there was a demand for the land for actual settlement was conclusive and final.

3.   Appellant had no right to purchase unless he was a bona fide actual settler at the date the act took effect.   Act of April 1, 1887, sec. 8.

4.   This land was not detached land, nor did appellant seek to purchase it under section 22 of said act.   His application was under section 8.

COLLARD, JUDGE, *Section A.*—The appellee M. K. Shiner brought this suit against W. H. Brown, January 29, 1889, to enjoin defendant from fencing a tract of 1072 acres of school land and to recover possession of the same, claiming under a lease for five years, of date 6th day of August, 1887, relating back and taking effect from July 27, 1887, duly filed for record in Frio County, where the land lies, on the 25th day of October, 1887. The land was described in the application for lease as dry grazing land, and was so classified September 21, 1887.

Plaintiff alleged, that defendant by fraudulent representations to the Commissioner of the General Land Office, that he was an actual settler on the land on June 20, 1887, in his application filed with the Commissioner November 4, 1887, had effected a contract of purchase of the same; that defendant was not such actual settler, but made such false and fraudulent representations to defraud plaintiff. It was also alleged, that defendant had never obtained a patent; that his purchase was at $2 per acre; and that he has only paid one-fortieth of the purchase price, and this after knowledge of plaintiff's lease.

Defendant answered by demurrers, general denial, and that the land, on the 6th day of August, 1887, was in his actual possession as an actual settler, having in good faith entered on the same on the 20th day of June, 1887; that he had erected permanent and valuable improvements thereon under his purchase from the State; that Frio County was an organized county prior to January, 1885 [1875?]; and that the land was detached and isolated within the meaning of the Act of 1887.

The court, trying the case without a jury, gave judgment for plaintiff for the land, and defendant has appealed.

The court substantially found, that plaintiff had obtained his lease as alleged, on the 6th of August, 1887, under the Act of the Twentieth Legislature, taking effect the 5th day of July, 1887, fully complying with the law, and making payments as required; the land was duly classified as grazing land and appraised, and such appraisement recorded in Frio County, September 24, 1887; and that the lease was irrevocable during the term of five years, and was not subject to sale during that period. In reference to the purchase of defendant the court found, that about the last of June, 1887, defendant, then residing on another place outside defendant's pasture, which inclosed this land as well as other lands, applied for the purchase of the land as an actual settler, "which application reached the Commissioner about the 4th of July, 1887, and was by him rejected because the land had not been classified; and I find that defendant was not at that time residing on the land. Again, in November, 1887, defendant made the affidavit as an actual settler, which was intended as an application and proof of actual settlement, and the same was filed in the General Land Office on the 4th day of November, 1887, and by the certificate of the Commissioner of December 3, 1887, it appears that the application of purchase was accepted as

of November 4th of that year. Defendant made the first payment and also paid the interest for the first year. This affidavit contains no proof that defendant desired the land for a home, or that he was not acting in collusion with other persons or corporation, or that such persons or corporation had no interest in the purchase. I find, that on July 5, 1887, when the Act of 1887 took effect, defendant was not residing on the land, and that he never occupied it until sometime about the 1st of August, 1887, and that since this time he with his family has resided upon and occupied the land."

The court then proceeds to find, substantially, that as early as July 2, 1887, defendant and his wife selected the spot where a well should be bored, procured machinery and placed it on the ground soon after to bore the well, but did not commence to bore the well with the machinery until the 19th of July, 1887; that he built a small, temporary sheep pen July 2, 1887, but did not put his sheep on the place until about the last of July; that he put lumber for a house on the land about the 23d of July, and about the last of the month built a house on it of lumber and canvas, in which temporary dwelling he and family lived a year; that it was the intention of defendant from about the last of June, 1887, to settle on the land, but he did not do so until after the Act of 1887 went into effect, but his residence and occupancy began as before stated. "In view of the intention of defendant and above acts, I find," says the court, "that there was no actual fraud on the part of defendant." There was no proof, the court also finds, whether the land had ever been classified under the law previous to the Act of 1887; nor was there any proof of any regulations prescribed by the Commissioner of the General Land Office, under section 22 of the act for the sale of detached lands therein designated. As the law of the case, the court concluded, that as the land was grazing or pasture land it was subject to lease irrevocably for five years. He construed the Act of 1887 as declaring that a valid lease of grazing or pasture land under the Act of 1887 could not be disturbed except by an actual bona fide settler residing on the land at the date the act took effect, and that defendant was not such settler at the time. This conclusion of the court raises an important question in the case. It is contended by the appellant that the Act of 1887, permitting an irrevocable lease upon school pasture lands for a period of five years, during which time an actual settler can not purchase, is unconstitutional. The court below declined to hold the act unconstitutional. The act provides, that "No lands classified as grazing land under this act shall be subject to sale during the existence of such lease, and the possession thereof by the lessee shall not be disturbed during the term of such lease so long as the rents are paid promptly in advance each year as required by this act." Gen. Laws 1887, p. 88, sec. 15. Agricultural lands are made subject to sale, notwithstanding the lease. Id. It is also pro-

vided, that a lease shall not continue for a longer term than five years. Id., sec. 14.

The question before the Supreme Court in the case of Smisson v. The State, 71 Texas, 229, was, Did the Legislature have the power to lease the school land at all? It was contended in that case that section 4, article 7, of the Constitution, requires the school lands to be sold, and thereby forbids their utilization by leasing for any time or under any circumstances. The leases before the court in that case reserved the right in the State to sell the leased lands or any part of them at any time, as did the Act of 1883 under which the leases were obtained. It was held that such leasing did not interfere with the right to sell, and was not therefore violative of the Constitution. The time when, the terms, and regulations under which sales should be made being left by the Constitution to the discretion of the Legislature, the law was not inconsistent with the Constitution. We have not under consideration the precise question that was before the court in Smisson v. The State.

The question now is, Can the Legislature so regulate the sale of pasture lands as to prevent a sale to an actual settler during the term of a five years lease?

Section 4, article 7, of the Constitution, was construed in its bearing upon this subject by the Supreme Court in Swenson v. Taylor, 80 Texas, 584, where the contest was over a lease of a watered section, under the Act of 1883, providing, "that when the lessee has but one watered section leased from the State in the same vicinity, such section shall not be subject to sale and settlement during the term of the lease." It was held that such a lease was valid and that the law was not unconstitutional, because the Constitution, "while it commands that the lands shall be sold, leaves it entirely to the discretion of the Legislature when it shall be done. It fails to direct that the entire body of such lands shall be immediately sold, or that until sold no other disposition can be made of them." It is also said, that "such a lease made in pursuance of an act of the Legislature must be held binding at least until abrogated by another act of the Legislature. * * * When the Legislature has declared that leased lands of a given description shall not be sold, no officer or agent of the government has an option to say that they shall be." Under the foregoing authority it must be held that the Act of 1887, which withdraws from sale these grazing lands, leased for five years, until the expiration of term, is constitutional. The Legislature can withdraw from sale for a time such lands and allow them leased during the interval, or permit them to be leased and protect them from sale during the lease at least for the term of five years. The principle is recognized, however, that one Legislature may not bind a succeeding Legislature by such provisions, but until the latter changes the policy so adopted it would remain in

force. So, after the lease in this case, the same land could not be sold until the lease expired. Appellant contends, that the Commissioner of the General Land Office could not make a valid lease until the lands were classified under the Act of 1887. It seems reasonable that the lands should be classified before leasing them, but there is no provision in the act requiring it. Section 14 declares, that "such leases shall be for a term of not more than five years, and the lessee shall pay an annual rental of 4 cents an acre for all pasture lands leased, which rental shall be paid each year in advance," etc. Section 3 provides, that the Commissioner shall as soon as practicable after the passage and approval of the act cause all the lands belonging to the several funds named, "which may be in demand for immediate settlement," to be classified and valued. The purpose of this was for sales. Section 4 of the act allows the Commissioner to adopt classifications already made if satisfactory to him. Section 5 provides, that "when any portion of said land has been classified to the satisfaction of the Commissioner under the provisions of this act or former laws, such lands shall be subject to sale, but to actual settlers only, in quantities of not less than 160 acres and multiples thereof, nor more than 640 acres." All the provisions of the act directing classification and appraisement relate to sales and not to leases. Classification is not made a prerequisite to leasing. Plaintiff's application to lease described the land as dry grazing land, and it was so leased on the 4th of August, 1887. It proved to be such land, and was classified as such on the 24th of September, 1887. The lease was not invalid on this ground.

Appellant insists, that it was incumbent on plaintiff to plead and prove as lessee that the land was not in demand for actual settlement at the time of the lease.

This was a matter left by the Legislature entirely to the discretion of the Commissioner. Section 15 says: "Any person desiring to lease any portion of the public lands, or the lands belonging to the several funds mentioned in this act, shall make application in writing to the Commissioner of the General Land Office, specifying and describing the particular lands he desires to lease; and thereupon the Commissioner, if satisfied that the lands applied for are not in immediate demand for purposes of actual settlement, and that such lands can be leased without detriment to the public interest, shall notify the applicant in writing that his proposition is accepted," etc. The act of the Commissioner is conclusive of the question of demand for actual settlement.

According to the court's findings, Brown moved on the land with his family about the last of July or first of August, and appellant contends, that such being the fact a valid lease could not be made. It is evident that at the time the plaintiff's lease was granted the land had not been classified. The first application of defendant to purchase was

about the 4th of July, and rejected by the Commissioner because the land had not then been classified. The lease was of date August 6, and though it was upon an application describing the land as grazing land, it was not actually so classified until September 24, 1887. There could be no sale of the land until it was classified, though there could be a valid lease. Defendant could acquire no right by actual occupancy (unless he was such occupant at the time the act took effect) before the land was in a condition to be sold, or before it could be put on the market. It is not necessary now to define the rights of a settler in good faith upon lands duly classified and ready for sale in case it should be leased by some other person before he had reasonable time in which to purchase after settlement. He is required to be an actual settler, and must make affidavit of the fact when he applies for purchase, and it may be the law would not permit a lessee to dispossess him while he is preparing to live on the land, or until a reasonable time after settlement in which to perfect a purchase. This question is not before us and should not be authoritatively decided. It is sufficient now to say that the land was not on the market for sale when the lease was made.

Appellant contends, that the court erred in holding that plaintiff was not entitled to possession of the land, it being shown that at the date of the filing of his lease for record in the county clerk's office he knew the land was in demand for settlement. We can not see that such knowledge would affect the validity of the lease. There was no error in the finding that defendant was not an actual settler on the 5th of July, 1887. The evidence supports the finding and establishes it beyond question. It was about the last of July when he moved with his family on the premises. According to the eighth section of the act, if he had resided on the land as an actual settler on the 5th day of July, 1887, when the act took effect, he would be protected in possession for six months after appraisement of the land, during which time he would have the exclusive privilege of purchase, and during which no lease could attach to defeat such privilege.

The finding was vital, but it was correct according to defendant's own testimony. There was no error in holding that defendant's application was made under section 8 of the act, and not under section 22. The land was not agricultural, nor was it described in the affidavit, which served both as affidavit and application, as detached or isolated land. He applied for the sale as an actual settler in good faith; his affidavit states that he had applied for purchase under section 8 of the act. Section 22 authorized sale to *any person* of detached and isolated sections and fractions thereof in certain counties. We have no doubt of the correctness of the finding.

It is not necessary to pass upon the sufficiency of defendant's affidavit to purchase. Several elements of a good affidavit were omitted

(Sec. 9); but it might be perfect, and yet the lease should prevail as we have before seen.   Neither is it necessary to inquire whether the courts could go behind the act of the Commissioner in granting a sale under such affidavit.   The lease was good and the sale could not defeat it.

We conclude that the judgment of the lower court should be affirmed.

*Affirmed.*

Adopted May 3, 1892.


Judge Marr, having tried this case below, did not sit on the appeal.


A motion for rehearing was refused.