## W. M. REED v. CHARLES ROGAN, COMMISSIONER, ET AL.

### No. 918. Decided November 22, 1900.

**1. School Land—Lease—Exemption from Sale—Constitution.**

The Act of May 7, 1897 (Laws 1897, pages 186, 187; Revised Statutes, 1895, articles 4218f, 4218s), exempting school lands in a certain section which have been leased from purchase by actual settlers during the term of the lease is not in conflict with section. 4, article 7, of the Constitution, requiring public school lands to be sold. (Pp. 181, 182.)

**2. Same.**

Such constitutional provision vests the Legislature with unlimited discretion as to the times, terms, and manner of sale of school lands, and was not intended to prohibit the deriving a revenue by lease of the lands until it should be deemed proper to place them on the market. (Pp. 181, 182.)

**3. Same.**

The right of the Legislature in providing for lease to prevent a subsequent Legislature from making sale questioned; but it is not involved in this law, which exempts the leased lands from sale only "until otherwise provided by law." (P. 182.)

**4. School Land—Sale—Local Law.**

A provision in regard to sale or lease of public school lands is not a local law by reason of being made applicable to such lands only within certain limits. The people of the State are interested in the property of the State, and a law which provides for its sale is a general or public one, though the land affected lies only in a certain locality. (P. 183.)

ORIGINAL APPLICATION for writ of mandamus to the Commissioner of the General Land Office.

*Kirby & Kirby,* for relator.—When any portion of the land set apart to the school fund has been classified to the satisfaction of the Commissioner of the General Land Office such lands shall be subject to sale. Sayles' Stats. 1897, art. 4218f.

Any lease of the public free school lands, subject to sale under article 4218f, supra, which operates to prevent a purchase by one qualified and entitled to buy under the law, is void. Const., art. 7, sec. 4; Sayles' Stats. 1897, art. 4218f.

That part of article 4218s, Sayles' Statutes 1897, passed as a general

law, which designates a line and provides that "any lands which may be leased south and west of said line shall not be sold during the term of the lease," is a local law, passed without notice and is void. Const., art. 3, secs. 56, 57; Rev. Stats. 1895, arts. 3260-3262; Clark v. Finley, 54 S. W. Rep., 346; People v. Chautauqua Co., 43 N. Y., 10; Kerrigan v. Force, 68 N. Y., 383; 2 Bouv. Law Dic., Rawles' Rev., p. 1034.

A local law passed without notice as required by the Constitution is void. Const., sec. 57, art. 3.

The general law relating to the school lands is and can be made applicable to the lands in that part of the State intended to be affected by article 4218s (latter part, which fixes the territory), and said part of said article being a local and special law, is violative of the Constitution and void. Sayles' Stats. 1897, art. 4218f and first part of 4218s; Const., art. 3, sec. 56, last paragraph.

In that portion of the State south and west of the line delineated in article 4218s, Sayles' Statutes, any actual settler has the right to lease within a radius of five miles of the land occupied by him, not exceeding three sections of the land held by a leaseholder who is leasing more than ten sections from the State, provided the large leasehold is not thereby reduced to less than ten sections. Rev. Stats. 1895, art. 4218s, as amended by Acts of 1897, p. 187.

*T. S. Smith*, Attorney-General, and *T. S. Reese*, Assistant Attorney-General, for respondent, Charles Rogan, Commissioner of the General Land Office.—The law in question is not a local or special law within the meaning of those terms as used in section 57 and the last clause of section 56; article 3, of the Constitution. The law in question is a part of the general law providing for the sale and lease of the public free school lands of the State, and provides that in certain defined territory, embracing only a limited portion of such lands, and of the State, lands leased under the general provisions of the statute shall not be subject to sale during the term of such lease. Const., art. 3, secs. 56, 57; Sayles' Civ. Stats. 1897, arts. 4218r and 4218s; 13 Am. and Eng. Enc. of Law, 982; Woods v. Durrett, 28 Texas, 429; Clark v. Finley, 54 S. W. Rep., 343; Smith v. Grayson County, 44 S. W. Rep., 922; Lastro v. State, 3 Texas Crim. App., 374; Ham v. State, 4 Texas Crim. App., 663; Beyman v. Black, 47 Texas, 566; Nichols v. Walter, 37 Minn., 270; State v. Ellet, 21 Am. St. Rep., 782, and note; State v. Hamner, 42 N. J. L., 435; State v. Mayor New Brunswick, 42 N. J. L., 51; In re De Vaucene, 31 How. Pr. (N. Y.), 289; State ex rel Cothren v. Lean, 9 Wis., 280; Pierce v. Kimball, 9 Greenl., 54, 23 Am. Dec., 537, and note; New Portland v. New Vineyard, 4 Shep., 69; West v. Blake, 4 Black., 236.

The provisions of the law in question, in authorizing leases of the public free school lands within the prescribed territory and withdrawing such lands from sale when leased, during the term of the lease, are not in violation of the provisions of section 4, article 7, of the Con-

stitution. Smisson v. State, 71 Texas, 232; Swenson v. Taylor, 80 Texas, 584; Brown v. Shiner, 84 Texas, 509; Snyder v. Compton, 87 Texas, 375.

Various acts show a uniform construction by the Legislature of the provision of the Constitution that school lands shall be sold, etc., as not prohibiting lease thereof and a withdrawal from sale during the term of the lease. Suth. Stat. Const., sec. 311; Endl. Interp. of Stats., sec. 527; Sedg. Const. of Stat. and Const. Law, 412; Stuart v. Laird, 1 Cranch, 299; Moers v. City of Reading, 21 Pa. St., 188; State v. Holcombe, 46 Neb., 88; Railway v. State, 77 Texas, 388; People v. Dayton, 55 N. Y., 377.

*Looney & Hamner* also filed a written argument and citation of authorities on behalf of respondent Charles Rogan.

*Tarlton & Ayres,* for respondent C. C. Slaughter.—The lease contract under which the respondent Slaughter holds the section in question is not absolute, because the law subject to the provisions of which the lease was executed prescribes a condition affecting the lease and terminating it at the will of the Legislature. This condition must be deemed to have entered into the contemplation of the parties, and to constitute an element in the contract. "All contracts are made with regard to the law existing at the time, and the law becomes a part thereof." Sayles' Civ. Stats., art. 4218s, supra; Hall v. Fields, 81 Texas,. 561.

As, by the terms of the law (article 4218s, Sayles' Civil Statutes) under which the land in question was leased to the respondent Slaughter, the Legislature reserved to itself the right to sell all such land "whenever the Legislature may deem this proper," the Legislature had the power to authorize such lease without violating section 4, article 7, of the Constitution providing "that the lands herein set apart to the public free school funds shall be sold under such regulations, at such times, and on such terms as may be prescribed by law." Smisson v. State, 71 Texas, 222; Fitzgerald v. State, 9 S. W. Rep., 150; Cunningham v. State, 11 S. W. Rep., 871; Falls County v. De Laney, 73 Texas, 463; Arnold v. State, 71 Texas, 239; Coleman v. Lord, 72 Texas, 288; Swenson v. Taylor, 80 Texas, 584; Brown v. Shiner, 84 Texas, 509; Harrington v. Blankenship, 52 S. W. Rep., 585; Sullivan v. Hall, 55 S. W. Rep., 579.

The law under which the respondent's lease from the State was issued was not a local or special law within the meaning of sections 56 and 57 of article 3 of the State Constitution, but the same is a public and general law. Sayles' Civ. Stats., art. 4218s; Acts of 1897, p. 186; Cordova v. State, 6 Texas Crim. App., 220, 221; Unity v. Burrage, 103 U. S., 447, et seq.; State v. Wright, 70 Ill., 398; Hawthorn v. The People, 109 Ill., 312; People v. Hoffman, 116 Ill., 587; State v. Lean, 9 Wis., 279; Cathcart v. Comstock, 56 Wis., 590; Wheeler v. Philadel-

phia, 77 Pa. St., 338; Railway v. Geiger, 34 Ind., 185; State v. Spaude, 37 Minn., 322; 23 Am. and Eng. Enc. of Law, 148-150, and note 1 on 146 and 150, and authorities there cited; Clark v. Finley, 54 S. W. Rep., 346.

Granting, for the sake of argument, that the statute in question is a local law, the allegations of the relator's petition that no notice of the intention to apply for the passage of said law was ever published in the locality intended to be affected thereby, are nevertheless wholly immaterial, because the passage of the act by the Legislature is conclusive of the fact that due notice was given. Moller v. City of Galveston, 57 S. W. Rep., 1120.

The provision in article 4218s, Sayles' Civil Statutes, conferring upon an actual settler the right to lease within a radius of five miles of the land occupied by him not exceeding three sections of the land held by a leaseholder who is leasing more than ten sections from the State, provided the large lease is not thereby reduced to less than ten sections, does not apply to that portion of the State including the section in question south and west of the line designated in that article. By the very terms of the article itself the right is conferred upon any actual settler "except in that portion of the State south and west of the above delineated line." Sayles' Civ. Stats., art. 4218s.

*Upson, Newton & Ward* also filed argument and citation of authorities on behalf of respondent Slaughter.

GAINES, Chief Justice.—In 1897 the Legislature passed an act amendatory of the laws for the sale and lease of the school lands of the State, which provided, among other things, that in a certain section of the State the lands which had been leased should not be subject to sale during the existence of the lease. The two sections of school land in controversy in this suit lie within the district made subject to the provision. In 1898 they were leased to C. C. Slaughter, one of the respondents, for the term of five years. They were situate within a radius of five miles of another section upon which the plaintiff Reed was an actual settler and of which he had become a purchaser from the State. Being desirous of purchasing the two sections in question, in January, 1900, he made application for the purchase of one of them, tendered to the State Treasurer the cash payment and executed his obligation for the balance of the purchase money, as required by law. In September of the same year, he took the like steps for the purchase of the other section. Each application was rejected by the Commissioner of the Land Office.

Thereupon the plaintiff filed in this court his original petition for a mandamus to compel the Commissioner of the General Land Office to cancel the lease of respondent Slaughter and to accept his applications to purchase and award him the land as a purchaser under the law. Subsequently the relator amended his petition by adding an additional

count, in which it was alleged that after his application to purchase was rejected he made application to lease the lands in controversy and that this was also rejected. He prayed in the amended petition that in the event that the court should hold that he was not entitled to purchase, the respondent Rogan should be commanded to award him a lease. The cause has been submitted upon demurrers to the petition.

The contention on behalf of the relator is that the provision of the Act of May 7, 1897, in so far as it attempts to exempt the school lands in a certain district which have been leased from purchase by actual settlers during the term of the lease, is in conflict with the Constitution of the State and is therefore void. The contention is based upon two grounds: first, that since the Constitution provides that the school lands shall be sold, the Legislature was without power to provide for a long lease and to provide, at the same time, that they should not be sold during the existence of the lease; and second, that the act in question is a local law and that it was passed without notice having been given of the intention to apply for its passage, as required by the Constitution. We think neither position is tenable.

The act which contains the provision which is assailed by the Legislature amends the Revised Statutes of 1895. Article 4218f of that act provides that the school lands, when classified, shall be subject to sale to actual settlers, except when otherwise provided by law, upon certain conditions and terms. The provision in question is found in article 4218s and reads as follows: "Any lands which may be leased south and west of the line herein designated shall not be sold during the term of the lease until otherwise provided by law; provided, the sections leased by any one party are not so selected as to detach sections which are thereby left unleased." (Then follows a description of the line.) "Except in that portion of the State south and west of the above delineated line, any actual settler shall have the right to lease within a radius of five miles of the land occupied by him, not exceeding three sections of the land held by a leaseholder who is leasing more than ten sections from the State, but shall not be allowed thereby to reduce the large leasehold to less than ten sections." Laws 1897, pp. 186, 187. The requirement of the Constitution which is claimed to render these provisions invalid reads as follows: "The lands herein set apart to the public free school fund shall be sold under such regulations, at such times, and on such terms as may be prescribed by law." Art. 7, sec. 4.

The first question we shall discuss is: Does the requirement deprive the Legislature of power to authorize a lease of the character of that in controversy? Even if this were a question of the first impression, we should have but little difficulty in determining it. The Constitution declares the will of the people that the lands shall be sold and makes it the duty of the legislative department of the government to provide for their sale; but as to the times, terms, and manner of sale, the several Legislatures are vested with an unlimited discretion. At the

time the Constitution was framed and at the time it was adopted, the great body of the school lands already set apart and the unappropriated public domain (one-half of which was dedicated to free school purposes) lay in the unsettled part of the State, and it must have been contemplated, as the event has proved, that many years would elapse before all of them could be sold for a price approximating their intrinsic value. The use of the word "times" tends to show that it was thought that they would become salable at different periods, and it might well have been considered that many years, even decades, might elapse before all could be sold. Considering the pronounced policy of the State to promote a public free school system and the pressing need of funds to carry on the system as already established, it is not conceivable that it was intended to prohibit the Legislature from, deriving a revenue by a lease of the lands until such time as in its wisdom it deemed it proper to place them upon the market for sale. But the question as to the power of the Legislature to authorize leases is no longer an open one. Smisson v. State, 71 Texas, 232; Swenson v. Taylor, 80 Texas, 584; Brown v. Shiner, 84 Texas, 509. In each of the cases cited, the lease laws then under consideration were held not to be in conflict with the Constitution. The only doubt that has been expressed is as to the validity of a law authorizing leases which would operate to prevent a sale of the lands when desired by a succeeding Legislature. Whether one Legislature can, by authorizing a lease of the school lands, prevent another from providing for a sale of the leased premises is a grave question, but it is one that we are not called upon to decide in this case. The provision in controversy does not absolutely exempt the lands in the designated district from sale during the term of a lease. As we construe the proviso found in the law in question, and reading "until otherwise provided by law," its purpose was to avoid the difficulty growing out of the constitutional provision we are considering and to make all leases subject to the condition that they might be terminated by a sale of the leased premises in case the Legislature which passed the act, or any subsequent Legislature, should see proper to authorize such sale. It not being mandatory upon the Legislature to provide for a sale of the school lands at any particular time, it was competent for it to provide for the sale or a lease and also to provide that should a lease be first effected, the lands should not be again subject to sale until such lease had expired, provided the right to authorize a sale by future legislation was preserved. Not only is the provision in question not in conflict with the decision of this court in the case of Smisson v. State, above cited, but it is also in accord with the intimation thrown out in the opinion therein rendered. The Legislature seems to us to have drawn the provision in the light of that decision and with a view to obviate the question suggested by the opinion but not decided in that case. Our conclusion is that the law in question does not contravene section 4 of article 7 of the Constitution; and that since the discretion of the Legislature was absolute as to the time when

and conditions on which the school lands should be sold, the relator has shown no right to have the sections in controversy awarded to him as a purchaser, unless the provision be void upon some other ground.

This brings us to the second question: Is it a local law within the meaning of section 56 of article 3 of the Constitution? Local it is in the sense that it applies to the lands of the State situate in a particular locality. But, in our opinion, it is not local within the meaning of the term as used in our Constitution. The question as to what constitutes a local law in the latter sense came before us at the last term of this court, and it was there held that the Act of 1897, restricting the compensation of certain officers in a designated class of counties in the State, and commonly known as the "fee-bill," was not a local law. Clark v. Finley, 93 Texas, 173. The effect of that decision was the holding that the mere fact that a law was made to operate upon certain counties of the State and was not operative as to others did not make it either a local or special law; and it seems to us that the point there decided is decisive of the question now under consideration. While the determination of the counties in which the law should have effect depended upon the population of the respective counties of the State, it was distinctly as local in its operation as the provision, the validity of which is now involved in this suit. It has been well said that "a law is not local that operates upon a subject in which the people at large are interested." Healey v. Dudley, 5 Lans., 115. The sales of the school lands of the State may be a matter of special importance to the people who reside in the localities where they are situate. They are none the less a matter of interest to the people in general and to the State itself. Not only is the school fund of which the lands are a part a matter of public interest, but also the provision in question confers upon every citizen of the State who is capable of contracting and who may comply with its conditions, the right to lease or purchase the lands therein designated. The enactment is not arbitrary. The fact that it is made to operate in a certain locality only grows out of its subject matter. The subject matter being lands, the legislation, in order to be provident, must be made to apply in some localities and not in others, unless, perchance, there were school lands in every locality in the State and all were of a uniform quality and character. But in fact our school lands differ greatly in quality, have been classified by law, and are marketable in varying degrees. To say that the Legislature can not provide different conditions for the sale of the lands in one locality from those provided in another, except by a law passed under the constitutional restrictions as to local legislation, would be to say that it could not authorize a sale or make other disposition of the landed property owned by it in its capital city without giving notice of the intention to apply for the passage of the law as is provided in section 57 of article 3 of the Constitution. In such a case, who is to give the notice? The simple solution of the question is that the people of the State—its public—are

interested in the property of the State, and· that a law which provides for its sale is a general and public law.

If the law is valid, then it is clear that under its provisions the relator has no right either to purchase or lease the lands which were already under lease to the respondent Slaughter.

The writ of mandamus is therefore refused.

*Refused.*