**HANDY v. JOHNSON et al.**

No. 348.

District Court, E. D. Texas, Tyler Division.

July 9, 1931.

See, also, 51 F.(2d) 809.

Jos. W. Bailey, Jr., of Dallas, Tex., for complainant.

James V. Allred, Atty. Gen. of Texas, and Sidney Benbow and F. O. McKinsey, Asst. Attys. Gen. of Texas, for respondents.

KENNERLY, District Judge.

This is a hearing in this cause, after due notice, on complainant's application for a temporary injunction and respondents' motion to dismiss, in connection with such application. The hearing is upon complainant's bill and respondent's motion to dismiss and oral argument and written briefs of counsel. The complainant is J. R. Handy, receiver of the Red River Bridge Company of Texas, under appointment of the United States District Court for the Eastern District of Oklahoma, and under appointment of this court; and the respondents are the Honorables Cone Johnson, W. R. Eli, and D. K. Martin, and who are members of, and who constitute, the highway department of the state of Texas.

For many years prior to April, 1929, the Red River Bridge Company owned and operated an interstate tollbridge spanning Red river, and crossing the boundary line between the states of Texas and Oklahoma, and collecting tolls from the public in the operation of such bridge, and since the appointment of the said Handy as receiver in April, 1929, he has had possession of, continued to operate such tollbridge, and collect such tolls.

Prior to and since the appointment of such receiver, the states of Texas and Oklahoma, acting through their respective Attorneys General and their respective highway officers, have filed, instituted, and prosecuted, and threatened to file, institute, and prosecute, various and numerous suits and actions against such bridge company, seeking to forfeit its charter rights, to enjoin it from collecting tolls for traffic passing over its bridge, to compel it to charge a lower rate of toll, if any at all, and involving many and various other matters and controversies, and, in addition, the said states of Texas and Oklahoma proposed and agreed between themselves to construct a free public bridge near to and paralleling the bridge owned by such bridge company, with the view and purpose of diverting traffic from the bridge of such bridge company, the effect of which would be to destroy the business of said bridge company and render its property valueless. Other similar suits and actions were filed and threatened by such bridge company against such Texas and Oklahoma highway officers, particularly to prevent the building of such free bridge. Such suits pending, and threatened, involved many and intricate

questions of law and fact, which, had all or a major portion of them been prosecuted to a final determination in the courts, would have caused and involved large expenditures of time and money by the said states of Texas and Oklahoma, and particularly the state of Texas and by the said bridge company and its receiver, and would have caused long and expensive delay in the settlement of the matters and issues involved therein.

On July 5, 1930, the highway department of the state of Texas and the said bridge company entered into two certain agreements in writing of that date, the forms of which were approved by the Attorney General of the State of Texas, which two agreements I find should be construed together as one instrument and contract, whereby all of said litigation, and threatened litigation, and all of the issues involved therein, as between the highway department of Texas and said bridge company, were fully and finally compromised and settled. Copies of said agreements are attached to complainant's bill, and are hereinafter referred to as contracts; the main features thereof being substantially as follows:

(a) The issues in the pending and threatened litigation are briefly set forth and referred to, and it is recited that both parties are desirous of settling all such litigation, and making an amicable adjustment of all matters in controversy between them. It is agreed that all litigation between such parties shall be dismissed, including any and all appeals, pending cases, etc.

(b) Such bridge company withdraws all objections, theretofore asserted, to the highway department of Texas constructing, owning, and operating a free bridge across Red river connecting the states of Texas and Oklahoma, parallel to and near to the bridge of said bridge company.

(c) The bridge company agrees to convey to the highway department of Texas, or its nominee, its bridge structure and its approaches and the land upon which such approaches are located and all franchises owned by said bridge company, and also to convey to such highway department of Texas certain easements for right of way purposes in the state of Oklahoma. The contracts in this respect read (paragraphs 1 and 5 of the first agreement of July 5, 1930) as follows:

"And Bridge Company further agrees to convey to the Highway Department of the State of Texas, or its nominee, at a time to be hereinafter provided, the bridge structure and its approaches and the land upon which said approaches are located and all franchises owned by said Red River Bridge Company of Texas; and further agrees to immediately upon the issuance of the order by the Secretary of War increasing the toll rates as herein provided for and as prayed for in application filed with the Secretary of War, to convey such easement for right-of-way purposes to the Highway Department of Texas, or its nominee, as said Bridge Company may have to land on the Oklahoma side leading to said new bridge."

"(5) The Red River Bridge Company of Texas agrees, as provided for in Paragraph 1 above, to convey to the Highway Department of Texas, or its nominee, the bridge and approaches leading thereto, and the land upon which said approaches are located, and the franchises appertaining to said bridge and its operation, as and when provided for above."

(d) The parties agree to join in an application to be made by the bridge company to the Secretary of War for authority to have the schedule of rates for such bridge company increased during the time that it is contemplated such bridge company will operate its bridge under the provisions of said contracts, and the highway department of Texas agrees said bridge company may operate its bridge and collect tolls in operation thereof during the time agreed upon in said contract.

(e) It is further agreed in said contracts that if the Secretary of War declines to grant the application of such bridge company, and the said highway department of Texas, for an increase of tolls for such bridge company, such bridge company may have additional time over and above the period specified in such contracts, to operate its bridge at the rate of toll in effect at the date of such contracts, as would recompense it for the difference between tolls collected at the reduced rate, and the tolls that would have been collected at the increased rate which it is contemplated would be granted by the Secretary of War.

(f) The highway department of Texas also agrees that it will not hinder nor divert traffic from the bridge of the bridge company, and that it will assert no claim for any money or securities belonging to such bridge company or claimed by such bridge company impounded by order of any court, etc.

(g) It is provided that such contracts are to be binding upon the parties thereto, their successors, assigns, or legal representatives.

(h) Such contracts in part (paragraphs 1, 2, and 3 of the second agreement of July 5, 1930) read as follows:

"(1) If the Red River Bridge Company of Texas is permitted to operate its said toll bridge at the agreed and increased rate of toll for a period of fourteen months from the date of the inauguration of said increased toll rate, then, in addition to the toll to be collected by it, the Highway Department of Texas agrees to pay to said Red River Bridge Company of Texas Sixty Thousand Dollars ($60,000.00) in cash, such payment to be made before the new bridge and the approaches and the roads leading thereto from the Texas side are completed and opened for traffic, and simultaneously with the delivery of instruments conveying title to bridge and franchises. All moneys and bonds held by the Receivers to be promptly delivered to the Bridge Company.

"(2) If the Red River Bridge Company of Texas is permitted to operate its toll bridge at the agreed increased schedule of tolls for a period in excess of the fourteen months, then in that event the said Highway Departments of Texas shall be entitled to a credit on the $60,000.00 of the net toll collected by said Bridge Company in excess of said fourteen months, or at the option of said Bridge Company said $60,000.00 shall be credited with the sum of $10,000.00 for each month in excess of said fourteen months.

"(3) In the event the bridge to be constructed by said Highway Departments, with its approaches and the roads leading thereto, are completed prior to the expiration of fourteen months, as provided for herein, and said bridge is ready to be opened for traffic by said Highway Department, then in that event the Highway Department of Texas agrees to pay to said Bridge Company, in addition to said sum of $60,000.00, an additional $10,000.00 per month for each month or proportional fraction thereof short of fourteen months operation by said Bridge Company, or at the option of the Highway Commission, it may pay a sum equal to the three months' average net tolls collected by said Bridge Company immediately prior to the opening of said bridge by said Highway Department of Texas for each month or proportional fraction thereof short of fourteen months operation by said Bridge Company, such sum to be paid said Bridge Company upon delivery of the instruments conveying title to said Bridge and approaches and franchises, and before the opening of said new bridge for traffic."

Such contracts were duly entered into by said highway department of Texas and said bridge company, and said highway department knew at that time that the properties of the bridge company were in the hands of such receiver appointed by such courts, and knew that said contracts could and would not become operative until approved by this court, and it was contemplated that such contracts would be presented to this court for approval in order to become effective. Such contracts were thereafter duly and fully approved by this court, and the receiver of this court was authorized and directed to enter into, approve, and adopt same, and he did so approve and adopt same, and such contracts thereby became in full force and effect and binding upon such receiver, as well as said bridge company and said highway department of Texas.

When said contracts were so approved by this court, all of the litigation between said bridge company and/or its receiver and the highway department of Texas was forthwith dismissed and disposed of, in the manner agreed in such contracts, and such bridge company and/or its receiver did and performed all other things which they agreed to do and perform under the provisions of said contracts; and upon the faith of the representations made in said contracts that same would be carried out by the highway department of Texas, such bridge company and such receiver have materially changed its and his position, situation, and circumstances, and that of the properties under the control of such receiver, and this court, so as to presently and in the future conform to, meet the requirements of, and carry out, said contracts.

The gist of the charge against respondents in complainant's bill is found in paragraphs XVIII, XIX, and XX of his bill, which paragraphs read as follows:

"XVIII. Your Receiver respectfully represents that notwithstanding the terms and provisions of the agreements as heretofore set out in Exhibits 'A' and 'B' attached hereto and prayed to be read as a part hereof, the Respondents in this cause, being the present members of the Highway Commission of the State of Texas, have deliberately, unlawfully and wrongfully refused to comply with the terms and conditions of said contract, in that they have announced and communicated to your Receiver their determination to open the parallel free bridge located on U. S. Highway No. 75, north of Denison, Grayson County, Texas, on the first day of July 1931, and before said time or at said time they do

not intend and will not pay the sum or sums of money due or to be due under the terms of the contract heretofore entered into and agreed upon.

"XIX. Your Receiver respectfully represents that to permit such breach of the contract as contemplated and intended by the Respondents hereto, will absolutely destroy the security which your Receiver has for the performance of the terms and conditions of the contracts hereinbefore referred to, which action will cause your Receiver great and irreparable damage, for which action he has no adequate remedy at law.

"XX. Your Receiver further respectfully shows to the Court that such deliberate and unlawful action to so knowingly violate the terms of the contract heretofore entered into by and between this Honorable Court, acting through its Receiver, constitutes a knowing and willful contempt of this Honorable Court."

■ 1. Respondents' motion to dismiss questions the jurisdiction of this court. It is manifest that this is not a suit in which jurisdiction is conferred upon this court by the parties being citizens of different states, etc. It is clear, however, that this court has jurisdiction because the properties of the bridge company are in the hands and custody of its receiver, and this is a suit for the protection of such properties, and to prevent a violation of contracts entered into by the receiver with reference thereto.

As stated, the bridge company and the highway department of Texas were engaged in litigation involving a franchise, and the bridge company's right to exist and do business, and the right of the highway department of Texas to build a free bridge adjacent to the bridge of such bridge company, and involving numerous other questions, and such litigation was settled with the approval of this court in accordance with such contracts of July 5, 1930. In such contracts, the bridge company and its receiver agree to sell to the highway department of Texas such bridge of the bridge company, together with its site, rights of way, easements, etc., and that, pending such sale and the construction of the free bridge by said highway department of Texas, such bridge company may operate its bridge at tolls agreed upon or fixed, etc. And that such highway department will, in addition to making no claim to the tolls collected by such bridge company, pay to such bridge company the sum of $60,000 and certain other large sums provided for in such contracts. It is clearly set forth in such contracts that the

sums to be paid the bridge company, including said sum of $60,000, by said highway department of Texas, are to be paid "before the opening of said new bridge for traffic." It being understood that the opening of such new free bridge near by the bridge of said bridge company would destroy the business and property and the value of the property of such bridge company. Such contracts were adopted by, and became binding upon, the receiver, as well as the other parties thereto, when approved by this court.

In view of these facts, and considering this bill as supplemental and ancillary to the original bill in the receivership cause, and in said receivership, and as a proceeding to protect and preserve the properties in the receiver's hands, and to prevent a violation of such contracts with reference to such properties, I think that this court has jurisdiction of this suit.

■ 2. Respondents also insist that this is a suit against the state of Texas and therefore cannot be maintained in this court. They rely upon Ex parte Ayers, 123 U. S. 443, 8 S. Ct. 164, 31 L. Ed. 229, and other cases which follow the Ayers Case. This is not a suit such as was the suit in the Ayers Case, but is a suit against respondents to enjoin them from violating, to the loss and injury of complainant, a contract, lawful and binding.

It has long been the rule that individuals who hold certain offices of the state may be enjoined in equity from proceeding in an unlawful manner, or in a manner contrary to a statute, or under a void statute. Ex parte Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 691; Scott v. Donald, 165 U. S. 58, 17 S. Ct. 265, 41 L. Ed. 633; Missouri, K. & T. R. Co. v. Railway & Warehouse Commissioners, 183 U. S. 53, 22 S. Ct. 18, 46 L. Ed. 78. Kaufman County v. McGaughey, 3 Tex. Civ. App. 655, 21 S. W. 261, 265; Terrell v. Middleton (Tex. Civ. App.) 187 S. W. 367, 369.

In the last-mentioned case, the rule is so well stated in a few words that I quote therefrom: "When a state officer acts without legal authority, he is not acting for or in the interest of the state, and a suit against him is not a suit against the state."

I think it is not unduly enlarging the rule, if it is enlarging it at all, to hold that respondents may be enjoined and restrained from doing acts to the damage and injury of complainant, in violation of the contracts solemnly entered into by them with complainant.

3. Respondents also ask for a dismissal of this suit upon the ground of the lack of equity. It is clear that a court of equity, upon the application of one party to a contract, under the circumstances which exist here, will enjoin and restrain the other party from violating it. Particularly is this true where, as in this case, the property of complainant as receiver would be immediately destroyed, and complainant would have no reasonably adequate remedy for the collection of the sums of money agreed to be paid by respondents in consideration of the settlement of the litigation between respondents and such bridge company and in consideration of the conveyance of the bridge of the bridge company to respondents, etc.

4. Respondents (and the state of Oklahoma, which appears as amicus curiæ) also strenuously insist that the public of the states of Oklahoma and Texas are so greatly interested in the opening of such free bridge, built by the states of Oklahoma and Texas, near to the bridge of such bridge company, that it would be against public policy, and a violation of the rights of the public, to restrain the opening of said free bridge until respondents pay the sums of money, etc., which they have agreed to pay before such bridge is opened. In presenting this contention respondents forget that the contracts which are the basis of complainant's suit and involved herein were executed in compromise and in settlement of litigation and threatened litigation which, if same had not been settled, would have resulted in long and expensive litigation and long delay in the building and opening of such free bridge, and possibly the prevention of the building of such free bridge. And that whatever rights the public now have in the matter flow out of, and are based upon, said contracts, and that in the execution of such contracts, the highway department of Texas represented and acted for the public. The public has no greater right in the opening of the free bridge than the highway department of Texas, and the right of the highway department of Texas to open such bridge is, by its own contracts, conditioned upon the payment, by such highway department, before such bridge is opened, of the sums of money which it is agreed shall be paid to such bridge company and its receiver under such contracts. Any delay, therefore, in the opening of such bridge is at the door of the highway department of Texas, and may be easily avoided by such highway department carrying out its plain agreement

with said bridge company and the receiver of this court. To that end, and as an administrative order in such receivership, the receiver of this court will be directed, and is hereby directed, to use every reasonable and proper effort to bring about an amicable adjustment of this controversy, and to notify the highway department of Texas that he, as such receiver, and this court, stand ready to do any and all things necessary and proper to be done in and about the carrying out of said contracts.

In the meantime, however, I cannot allow the respondents, the members of the highway department of Texas, to destroy and strike down the property in the custody of this court and its receiver, by doing the things they have agreed not to do, i. e. by opening such free bridge, until they have complied with such contracts, and paid to the receiver the sums of money agreed to be paid under the terms and provisions thereof. An order will enter, therefore, granting the temporary injunction prayed for by complainant in his bill.