### HANDY v. JOHNSON et al.
No. 348.

District Court, E. D. Texas, Tyler Division.
Aug. 6, 1931.

810

Jos. W. Bailey, Jr., of Dallas, Tex., for complainant.

James V. Allred, Atty. Gen. of Texas, and Sidney Benbow and F. O. McKinsey, Asst. Attys. Gen. of Texas, for respondents.

KENNERLY, District Judge.

Respondents move to dissolve the temporary injunction, heretofore granted in this cause, (D. C.) 51 F.(2d) 805, upon the ground that the Legislature of Texas has enacted a law, which became effective July 24, 1931 (Acts 42d Leg. [1931], 1st Called Sess., c. 2), granting complainant the right to sue the state of Texas, and/or the Texas highway commission, upon the contracts involved herein, and further upon the ground that the public interests call for the opening of the bridge across Red river, erected by the states of Texas and Oklahoma, and generally referred to as the "free bridge." Complainant answers that the legislative act may be invalid, or, if valid, that it does not afford complainant such remedy and relief as to justify the dissolution of the temporary injunction.

The first inquiry is as to the validity of this act.

1. Complainant suggests that the act is a local or special law, which the Legislature is prohibited from passing, under section 56 of article 3 of the Texas Constitution, or if not so prohibited, that it was passed without giving the thirty days' notice required by section 57 of such article.

After naming a number of subjects regarding which the Legislature is prohibited from passing a local or special law, section 56 of said article uses this general language: "And in all other cases where a general law can be made applicable, no local or special law shall be enacted."

Apparently, by this language, it is left to the Legislature to determine what is, and what is not, a local or special law, or a general law. The determination by the Legislature that a given subject should be dealt with by a general law, and as to what is a general law, carries much weight, and may be decisive of the question. In Smith v. Grayson County, 18 Tex. Civ. App. 153, 44 S. W. 921, 923, it is said: "And we find that it has been held that, where this prohibition applies,—i. e. no local law shall be passed where a general law can be made applicable,—it is the sole province of the legislature to determine whether or not a general law can be made applicable. State v. Hitchcock, 1 Kan. 178 [81 Am. Dec. 503]; Gentile v. State, 29 Ind. 409; State v. Tucker, 46 Ind. 355; Marks v. Trustees, 37 Ind. 155; State v. County Court of Boone County, 50 Mo. 317 [11 Am. Rep. 415]; Davis v. Gaines, 48 Ark. 370, 3 S. W. 184; Cooley, Const. Lim. (7th Ed.) p. 200."

It is undisputed that no notice such as is contemplated in the passage of local or special laws (section 57 of article 3, Texas Constitution) was given before the passage of this act, and it is clear that the Legislature intended it to be, and passed it as, a general act.

2. The courts, in determining whether an act is general, or whether local or special, will not single out one circumstance, or one provision of the act, but will consider the whole act, together with the surrounding circumstances, reasons for its passage, and the purposes to be accomplished. The viewpoint and the intention of the Legislature will be ascertained. It is certain that the Legislature, in passing this act, had in mind, considered, and was influenced by all the facts, i. e. that the Red River Bridge Company for many years operated a tollbridge across Red river, the boundary line between Oklahoma and Texas, and that the operation of such tollbridge was later taken over by complainant as receiver. That the state of Texas and its highway commission, upon the one hand, and the bridge company and its receiver, upon the other hand, became involved in serious controversy and litigation, in which there was brought in question, among other things, the rates charged by the bridge company, the franchise of the bridge company, the right of the states of Texas and Oklahoma to build the free bridge near by such toll bridge, etc. That the state highway commission (of which the present Governor of Texas was then chairman) and the Red River Bridge Company and its receiver, in good faith, and dealing with each other with utmost frankness and fairness, entered into a settlement of the controversy and litigation, which settlement is evidenced by the two contracts of July 5, 1930, referred to in the act. That the Red River Bridge Company and its receiver, in compliance with the contracts, dismissed the litigation, and caused to be made a conveyance of a portion of the property which it was required to convey, and stands ready to comply with all the terms of such contracts. That although the contracts were approved as to form by a former Assistant Attorney General of Texas, the present Attorney General of Texas doubts, and advises against, the validity thereof, and under the law of Texas, it had become practically impossible for the state, through its highway commission, or otherwise, to carry out its side of said contracts, particularly with respect to the payment of the sums of money required to be paid to the bridge company or its receiver thereunder. The Legislature also knew that, under the contracts, the state highway commission had obligated itself and the state of Texas, not to open the free bridge until the sums of money agreed to be paid to the bridge company and its receiver thereunder had been paid, and that this court had enjoined the members of the highway commission from opening such free bridge until such sums of money be paid. In other words, the Legislature recognized that the honor of the state of Texas and its people is involved, because the state having received the benefits under said contracts is morally bound (and I think legally bound) to perform under them. With all these facts before it, the Legislature determined that the matters are of general interest to the people of the state, and should be dealt with by a general act, and it passed, and the Governor of Texas approved, this act.

In the case of Stephensen v. Wood, 34 S.W.(2d) 246, page 248, the opinion was by the Commission of Appeals on certified question, and was adopted by the Supreme Court and ordered certified. This is perhaps the latest expression of the Supreme Court of Texas as to what is, and what is not, a local or special law. It is there said: "It seems to be contended by Stephensen that the instant law is local or special within the meaning of the above-quoted provisions of our state Constitution because its enforcement is restricted to a particular locality, and does not include all coastal waters. This contention is utterly untenable. It is the settled law in this state that a statute is not local or special within the meaning of sections 56 and 57 of article 3 of our state Constitution, even though its enforcement be restricted to a particular locality, *if persons or things throughout the state are affected thereby, or if it operates upon a subject in which the people at large are interested.* Clark v. Finley, 93 Tex. 171, 54 S. W. 343, 345; Reed v. Rogan, 94 Tex. 177, 59 S. W. 255, 257; Logan v. State, 54 Tex. Cr. R. 74, 111 S. W. 1028, 1029."

Other cases bearing upon the question are: Unity v. Burrage, 103 U. S. 457, 26 L. Ed. 405; Knox County v. Aspinwall, 21 How. (62 U. S.) 539, 16 L. Ed. 208; Reed v. Rogan, 94 Tex. 181, 59 S. W. 255; Stephensen v. Wood (Tex. Civ. App.) 35 S.W. (2d) 796; Smith v. State, 54 Tex. Cr. R. 298, 113 S. W. 289, 290.

Complainant cites and relies upon the case of Vincent v. Wayland (Tex. Com. App.) 235 S. W. 1084, 1086, which was a case involving a legislative act incorporating the city of Plainview. It will at once be seen that the facts in that case are wholly different from the facts here, in that, as stated in the opinion, the act incorporating Plainview was applicable in its terms only to that particular area within the boundaries of the city of Plainview. The cases cited in the opinion are, in the main, cases of the same character. The definition of a local act and of a special act, as given in the opinion, is as follows: "A local act is an act applicable only to a particular part of the legislative jurisdiction. A special or private act is a statute operating only on particular persons or private concerns. 36 Cyc. 986, and authorities there cited."

I have not had access to all of the cases referred to in the footnotes in the quotation from Cyc., but several of the cases cited in the footnotes seem to support the view set forth here. For instance, one of the footnotes is as follows: "Other definitions are: 'One which relates to private matters, which do not concern the public at large.' Hart v. Baltimore, etc., R. Co., 6 W. Va. 336, 349; Burrill L. Dict. (quoted in Allen v. Hirsch, 8 Or. 412, 423)."

Not only in the surrounding circumstances, but in the wording of the act itself, it is clearly shown that the act is of a general nature and of general interest throughout the state. In the emergency clause in section 6 of the act, it is found and stated that thousands of citizens of Texas, and of other states, are interested in the subject-matter of the legislation. Not only this, but the money is appropriated to pay any judgment recovered by the bridge company or its receiver, and the particular fund out of which such judgment is to be paid is designated.

If this was a case where, as in State v. Elliott (Tex. Civ. App.) 212 S. W. 695, 697, there was involved only the one question of granting the right to sue the state, then there might be some ground for contending that this act is a local or special law, although I do not regard the decision in the Elliott Case as being necessarily authority for the holding that an act simply giving a person the right to sue the state is a local or special law. The filing of any kind of suit against the state is a matter in which every citizen of the state is interested.

The conclusion is reached that this act is neither a local nor special law within the meaning of the Texas Constitution, but is a general law, and that it is valid.

This conclusion answers the claim of respondents that the act is not valid, because it, as claimed, grants jurisdiction to the district court of Travis county, where it had no jurisdiction before, seeks to regulate the practice in that court, and changes the method of the collection of debts, etc. I think these various provisions, mentioned by complainant, are of the same kind and character discussed in the closing portion of the Elliott Case (State v. Elliott [Tex. Civ. App.] 212 S. W. 702), where it is said: "If the state through her Legislature may grant the right to be sued, which has long since been well settled, it is not perceived why she may not also prescribe the conditions on which, and the procedure through which, that may be done. The statute here presented merely adopts an existing and familiar means of carrying out the purposes contemplated. If

specific mention thereof had been omitted, leaving nothing but the bare right to sue, the same procedure would nevertheless have necessarily been followed."

3. If, however, the act be regarded as local or special law, much can be said in support of the view that it comes within an exception to the prohibition against local and special laws contained in section 56, article 3, of the Constitution, reading as follows: "Relating to *ferries or bridges*, or incorporating ferry or bridge companies, *except for the erection of bridges crossing streams which form boundaries between this and any other State.*"

And that since the real subject-matter of the act may be held to be the erection of a bridge crossing a stream which is the boundary line between Texas and Oklahoma, the above-quoted provision of the Constitution permits the passage of such a local or special law. If this be correct, and the act is a local or special law, it is necessary then to look to see whether notice must be given under section 57. Respondents strongly insist that under the last portion of section 9 of article 8 of the Texas Constitution, the thirty days' notice is not required to be given. This reads as follows: "And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

While the above-quoted provision gives the Legislature the right to pass local laws for the *maintenance* of public roads and highways, the word "maintenance" has been given a very broad meaning. In Ex parte Cooks, 61 Tex. Cr. R. 449, 135 S. W. 139, 141, the Texas Court of Criminal Appeals uses this language: "It would seem that if there was any repugnancy (and we see none) between sections 56 and 57, art. 3, and section 9, art. 8, that the expression made by the amendment in 1890 would control. Railway Co. v. Rambolt, 67 Tex. 656, 4 S. W. 356. It is insisted, however, that this clause of the Constitution limits the purposes for which local laws may be passed to the maintenance of roads already constructed, and would not authorize the passage of a statute *creating a road system.* We do not think the word 'maintenance,' as used in this section of the Constitution, was intended to be used in this restricted sense. By the use of the words 'maintenance of public roads and highways' the framers of the Constitution had reference to maintaining a system of public roads and highways which would include all the necessary powers to *provide* and keep up

a system of highways. Brown v. Graham, 58 Tex. 254."

It seems beyond question that a bridge such as is involved in this controversy is necessarily a part of the public road system, and there is much to be said in support of the view, and I strongly incline to the view that if this act is a local or special law, no notice such as contemplated by section 57 of article 3 of the Texas Constitution is required to be given. Dallas County v. Plowman, 99 Tex. 509, 91 S. W. 221.

4. Complainant also suggests that the act is contrary to the Constitution of the United States, and therefore void, because it requires or is conditioned upon the temporary injunction which complainant has obtained in this court being dismissed within a specified time, etc. I think that this is one of the conditions that the Legislature had a right to make in granting the right to sue the state, and do not think that it renders the act contrary to the Federal Constitution.

5. This brings us to the question of the character of relief that complainant may obtain under such act.

Complainant suggests that the relief that he, as receiver, can obtain under the act is inadequate, in that he can sue the state of Texas, and/or its highway commission, only to recover the sums of money which the state has, under said contracts, agreed to pay to the bridge company or its receiver. And that in the event such contracts are held invalid, he cannot have in such suit an adjustment of the equities, arising out of the fact that the bridge company and its receiver have, in reliance upon the performance by the state of its contracts, dismissed all of the pending suits, permitted the free bridge to be built, and conveyed to the nominee of Texas, or its highway commission, certain properties required to be conveyed under said contracts, particularly certain land in the state of Oklahoma which was conveyed to that state. If only the wording of section 1 of said act be looked to, there might be some basis for this suggestion. But the whole act and the surrounding circumstances must be looked to. In wording the act, the Legislature had before it, as already detailed, all such circumstances, and I think it was the intention of the Legislature, in using the language it did use in this act, to permit such a suit as would settle the whole controversy between these parties. The contracts, on their face, show that in consideration of the money which the state of Texas agrees there-

under to pay to the bridge company or its receiver, such bridge company and its receiver surrender valuable rights, and the Legislature knew at the time of the passage of the act that such rights had been so surrendered, and to hold that the Legislature intended to deny to complainant a suit for full relief would be in effect to charge the Legislature with improper motives and unfair dealing. In former opinion, upon granting the temporary injunction restraining the opening of the free bridge, the court recognized that then, or thereafter, the enforcing of the agreement of the state and its highway commission to keep the free bridge closed until the payment by the state of the sum of money provided in such contracts, might result in serious inconvenience to the traveling public, and to avoid same, the receiver was instructed to use every effort to bring about a settlement and adjustment of the controversy. I regard this legislative act as the answer of the Legislature to this action of the court, and, therefore, am inclined to give, and do give, such act a broad and liberal construction. In my opinion, such act authorizes the court in which complainant may sue to give complainant all the relief to which complainant may be entitled, either at law or in equity, except in one particular, and that is that there is to be found in section 1 of the act the following language: "Provided, however, that a writ of injunction will not lie for the purpose of closing said bridge if and when the same is opened for traffic by the dissolution of the pending injunction or otherwise. This limitation, however, shall not be construed to mean that the said Red River Bridge Company and/or J. R. Handy as Receiver, will be denied any right which either of them may have to injunctive relief or otherwise against any public official of the State of Texas, the State of Texas, or any agency thereof, for the enforcement of any judgment which may be obtained against the State of Texas or the Highway Commission, as such."

■ This means that the court in which the suit may be brought by complainant cannot, prior to judgment, issue a temporary injunction, such as this court has issued, but it is clear that complainant's remedy and relief otherwise are not cut off, and also that after judgment, complainant may have such process as may be necessary to carry out the provisions of the final judgment or decree, including an injunction closing the free bridge

if that be necessary to give complainant full relief.

■ It is also suggested that the Legislature may repeal this act. Having passed the act with all the facts before it, I deem it most unlikely that the Legislature will repeal it. Should it do so, however, it is certain that complainant would not be left without relief, either in this court or elsewhere.

■ In this connection, it occurs to me that this court should not, in this case, require that the remedy at law afforded complainant should be as complete and as adequate as ordinarily required before a party is prevented from proceeding in equity, for the reason that, as hereinafter more fully pointed out, this court cannot, in this proceeding, accord complainant full and adequate relief in the sense of settling all the issues that have arisen, or will arise, in this controversy. Nor do I think this court should, under the circumstances, strictly enforce the general rule contended for by complainant, that a legal remedy in the state courts is not ordinarily regarded by the federal courts as complete and adequate.

■ 6. The next question is this: This court cannot give complainant relief in the form of a judgment against either the state or its highway commission, for the money owing to complainant under said contracts. This court cannot adjust the equities between complainant and the state of Texas, and/or the highway commission, if the contracts, on final hearing, are found invalid. This court can only keep in force the temporary injunction, closing, and keeping closed, the free bridge until the state complies with its contract and pays the money agreed to be paid, or until complainant can, by the operation of the toll bridge, earn the money to which he as receiver is entitled.

Query: Should that course be followed, or should complainant be directed to proceed under this legislative act?

Neither course is altogether desirable. The desirable thing is for the state to comply with its obligation under the contracts, and thus end the matter. But, as stated, that does not seem possible under the conditions which have arisen. I have, therefore, reached the conclusion that the proper and better course is to dissolve the temporary injunction herein, and direct the receiver to proceed under the legislative act, and it is so ordered.